**Richmond.**

COLES' EX'OR v. MARTIN.

FEBRUARY 12, 1901.

Absent, Phlegar, J.

1. CHANCERY PRACTICE—*Statute of Limitations—Issue—Exceptions.*—The defence of the statute of limitations to a claim asserted before a commissioner in chancery may be made by an exception to the commissioner's report. The mere fact that, subsequently, the claimant asserts his claim by a petition filed in the cause, upon which no process issues, does not render it necessary to make the issue of the bar of the statute again.

2. STATUTE OF LIMITATIONS—*New Promise—Admission in Will—Promise to Account—Several Debts.*—A letter asking for an account and promising to pay it, will not be held to apply to old accounts, the last items of which are from seven to fifteen years' standing, and which are subject to sundry payments and set-offs, leaving uncertain and unascertainable balances, when the writer owes the promisee an account then current, and another of recent date; nor will a clause in a will of the debtor admitting a debt be held to apply to such old accounts, but both letter and will will be deemed to be applicable only to the current account, and the one of recent date.

3. STATUTE OF LIMITATIONS—*New Promise—Uncertain Amount—Extrinsic Evidence.*—When there is a promise to pay, not specifying any amount, but which can be made certain as to the amount, extrinsic evidence may be received to ascertain the amount due. It is sufficient if the true amount is capable of being made certain.

4. STATUTE OF LIMITATIONS—*New Promise—Admission.*—A new promise to remove the bar of the statute of limitations must be determinate and unequivocal; and to imply a promise of payment from a subsequent acknowledgment, such acknowledgment must be an unqualified admission of a subsisting debt which the party is liable for and willing to pay.

Appeal from a decree of the Circuit Court of Pittsylvania county, pronounced December 4, 1899, in a suit in chancery under the style of *Baldwin's Ex'ors, for, &c.* v. *Cabell and Others,* in which the appellee asserted a claim against the appellant.

*Reversed.*

The opinion states the case.

*Berkley & Harrison,* for the appellant.

*Harrison & Long* and *Joseph Whitehead,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

In the chancery cause of *M. J. Baldwin's Ex'ors, for, &c.* v. *Cabell et als.,* pending in the Circuit Court of Pittsylvania county, a master commissioner was ordered to take and report an account of the debts outstanding against the estate of Helen C. Coles, deceased, and on April 16, 1898, he filed his report, and therein set forth that Dr. R. W. Martin had filed before him three accounts against the said decedent's estate, "aggregating $1,992.30, exclusive of interest." The commissioner did not pass upon these claims, but referred them to the court for decision as to whether or not they were barred by the statute of limitations, and called attention to " Item 6th" of Helen C. Coles' will. On this report the testatrix's executor endorsed this exception: " The claim of R. W. Martin, referred to in the within report, is excepted to because barred by the statute of limitations, and the undersigned objects to its allowance because so barred."

On April 27, 1898, the Circuit Court confirmed the commissioner's report, except as to the accounts of Dr. R. W. Martin, and gave him leave to "present his rights, and resist the bar of the statute in such manner and form as he or his counsel might deem best."

Thereupon Dr. Martin, by leave of court, filed his petition, claiming from the estate of the testatrix the amount of four accounts—$90.00 and interest due him as surviving partner of himself and E. F. Snead; $36.50 due him in his own right; $927.00 and interest due him as surviving partner of himself and C. Martin; and $1,028.80 and interest due him in his own right.

The account of Snead and Martin for $90.00, and that of Dr. R. W. Martin individually for $36.50 are not called in question, as they are clearly not barred by the statute of limitations.

The account upon which the aggregate of $927.00 and interest is claimed begins with " To amount of account for 1869," so much, and continues through each year down to May 1, 1880, and upon it no credits of payments are given; and the account for an aggregate amount of $1,028.80 is likewise made up, beginning with May 1, 1880, and ending March 1, 1888, and upon this a credit of " By coupons $48.45 " alone is given.   The claims presented by Dr. Martin were by decree of the court referred to a commissioner to take evidence in regard to them, and, upon the evidence so taken and reported, the court decreed in favor of Dr. Martin against the executor of Helen C. Coles, *de bonis testatoris* for $90.00 due him as surviving partner of the firm of Snead & Martin, and for $1,462.47, with interest thereon from the 23d day of January, 1897.   This latter sum was arrived at by allowing Dr. Martin the amount of his three accounts presented, other than the account of Snead & Martin, and crediting them with amounts shown by the executor of Helen C. Coles to have been paid in money or farm produce, and not theretofore credited by Dr. Martin.

From this decree the executor obtained an appeal to this court.

It is only necessary that we determine whether or not the account claimed by appellee, Dr. Martin, as surviving partner of himself and C. Martin, ending May 1, 1880, and that claimed

by him in his own right, ending March 1, 1888, are barred by the statute of limitations.

It appears that appellee was the attending physician of the testatrix, who was an invalid, during the years mentioned in the two accounts in question, and down to April, 1895, when he changed his place of residence from Chatham, Pittsylvania county, to the city of Lynchburg, and it is admitted that he never presented these accounts, either to the testatrix in her life-time, or to her brother, Walter C. Coles, who, as her agent, attended to all of her business matters down to the year 1888, from which time she attended to the payment of her physician's bills herself. It also appears that, from 1889 to 1893, inclusive, appellee rendered to the testatrix each year his medical bill, which she paid regularly and promptly, but he had not, at testatrix's death, presented his bill for his services from January 1, 1894, to April 1, 1895, amounting to $36.50. The account of C. & R. W. Martin ending May 1, 1880, and that of appellee, R. W. Martin, ending March 1, 1888, are barred by the statute of limitations, if the statute has been well pleaded, unless they are taken out of its operation by a letter written by the testatrix to appellee April 12, 1895, about the time he moved from Chatham to Lynchburg, or by "Item 6" of her will, bearing date April 25, 1897, just one month before her death, read in connection with the general clause of the will directing the payment of the testatrix's debts.

It is argued that the bar of the statute is not pleaded because appellant filed no plea, answer, or demurrer to the petition of appellee setting up his claims against the testatrix's estate.

" The same strictness of pleading is not required in equity as at law. It is not common to plead the statute specially or formally in equity; but only to rely upon it in general terms in the answer. The only reason for requiring the defence to be made by plea or answer is that the plaintiff may have an oppor-

tunity, if he can, to take the case out of the operation of the statute." *Tazewell's Ex'or* v. *Whittle's Adm'r*, 13 Gratt. 344.

In this case the issue of the statute of limitations was, as is usual in such cases, made by an exception to a commissioner's report of the debts against the testatrix's estate, and the court referred the accounts of appellee to the commissioner to afford him an opportunity to take his claims out of the operation of the statute, and the mere fact that he stated his claims by a petition filed in the cause, upon which no process was issued, did not make it necessary for appellant to make the issue of the bar of the statute again. The court by its decree directed that evidence be taken upon that issue, which afforded appellee ample opportunity to take his claims out of the operation of the statute, if he could. This was sufficient to entitle appellant to rely on the statute as a bar to the recovery of the claims.

The case of *Hubble* v. *Poff*, 98 Va. 646, relied on by appellee, only held that the statute of limitations could not be availed of in a court of equity by demurrer to the bill, and for the manifest reason that the demurrer does not apprise the plaintiff of the intention of the defendant to rely on the bar of the statute, and affords him no opportunity to reply any facts that might take the claim asserted in the bill out of the operation of the statute.

The first part of the letter of April 12, 1895, relied on as an acknowledgment of the debts alleged to be due upon the two accounts in question, from which the law will imply a promise on the part of the writer to pay them, gives expression to the writer's feelings upon hearing that appellee, who had been her attending physician for many years, and to whom she was greatly attached, was about to change his place of residence from Chatham to Lynchburg, and then follows this clause: "It is a shame that this move has been made necessary by our failing to pay what we owe you. Let me have my bill, and you shall have what I owe you in a short time. I shall borrow the money if I can't get it any other way. The times are hard, and I have

let my friends have all my money. I can't make them pay in such times, so I am dependent upon the farms for a support. You know what that means. If I could only draw in my means, I could pay you every cent I owe you to-morrow. Enough, however. You send the bill, and I will arrange everything for you."

Item 6 of the testatrix's will is as follows: " I give and bequeath to Dr. Raleigh W Martin, Sr., as a mark of my esteem and appreciation of his fidelity to me as my physician the sum of one hundred dollars, which is to be in addition to his fees against me for his services as a physician."

We shall consider the letter and the item of the will in their order.

It is contended that the letter contains not only a distinct acknowledgment of the writer's indebtedness on the two accounts, but an express promise to pay it. We do not so read the letter.

If it be conceded that it is proven that the account claimed by appellee as due him as surviving partner of himself and C. Martin, and that claimed as due to himself show the correct amount due on the accounts, can it be said that the testatrix, by her letter of April 12, 1895, had reference to these stale accounts, and intended to make such an acknowledgment that the amounts claimed to be due thereon were due and owing, as that the law would imply a promise on her part to pay them? The letter contains a promise to pay the account asked for, but it must be borne in mind that the two old accounts had never been presented to her; that the testatrix had paid her medical bill year by year from 1889 to 1893, inclusive, to appellee when presented, and that he had not presented his bill for the period beginning January 1, 1894, to the date of the letter. Adverting, as she does in her letter, to the hard times; that she had let her friends have all of her means; that she was dependent upon her farms for a support, and that she would probably have to

borrow the money to pay the bill of appellee she was then asking for, it would seem clearly unreasonable to construe the letter as referring to an account made with the firm of C. & R. W. Martin, dissolved by the death of the former fifteen years theretofore, or to the account of appellee ending more than seven years prior. She knew that payments were made in money on her medical accounts during the years embraced in the two accounts, and that appellee had gotten from time to time grain and other supplies from her farms. While appellee, testifying in his own behalf, says that frequently the testatrix spoke of these old accounts and expressed a desire to have them settled, on the other hand, it is shown that appellee had received, as already stated, payments in money from Walter C. Coles, agent of the debtor, and had gotten from time to time farm produce on these accounts, of which he kept no account. He admitted after the death of the testatrix that he was unable to make out a correct account against her estate, and invoked the aid of her executor in attempting to do so, who replied by letter that he was unable to render the needed assistance, and deplored the condition of accounts resulting from appellee's failure to present them in due time, and when they were repeatedly asked for, and could have been paid, if anything was due thereon, without trouble.

It is true that the executor, testifying as to these accounts, says: "If all the credits mentioned in exhibit 'Dr. Martin' filed by me, and all the credits mentioned by Walter Coles, Jr., in his deposition, have been allowed * * * * *, I know of no reason why they (the accounts) are not correct"; but he also says: "I knew nothing of Dr. Martin's bills until to-day," and it is manifest from his whole deposition, and his letter to appellee, already referred to, that he did not mean to admit the correctness of the old accounts, as contended for by counsel for appellee, but only to say that by reason of the lapse of time, and the want of data by which to make up an accurate statement of

all the payments on the accounts, he was not in a condition to gainsay their correctness as then presented. He could not, under the circumstances, have meant to say more.

For this condition of his accounts against the testatrix's estate the appellee alone is responsible, and this condition is clearly such that an accurate statement of what, if anything, is due on the two old accounts, has not and cannot be made.

Her letter of April 12, 1895, referred to the fact that the failure of appellee's patrons generally to pay him, as the cause of his leaving Chatham, not testatrix's failure to pay, as appellee's counsel argue, and as she had paid year by year from 1889 to 1893, inclusive, his bill, when presented, and knew she owed him a bill running from January 1, 1894, to the date of her letter, but not the amount thereof, the letter, in our opinion, does not show, certainly not with sufficient clearness, that she had reference to an account of C. & R. W. Martin, beginning more than twenty-six years and ending more than fifteen years prior to the date of the letter, or to the account of appellee beginning May 1, 1880, and ending more than seven years prior to the date of the letter. To construe the letter as referring to the account of January 1, 1894, to April 12, 1895, would be reasonble, while a construction that it refers to the two old accounts would be unreasonable, in view of all the circumstances to which we have referred.

What has already been said applies with equal force to the "6th item" of the will.

The authorities vary as to what amounts to such a recognition in writing of a debt as to repel the bar of the statute, but nowhere has a bequest, with such recognition of indebtedness which did exist and was clearly due, sufficed to revive a claim as stale as the account claimed to be due C. & R. W. Martin on the 1st day of May, 1880, and prior, and the claim of appellee upon an account beginning May 1, 1880, and ending March 1, 1888, only asserted after the death of the debtor in May, 1897,

and never presented or payment demanded in testatrix's life-
time. When the testatrix executed her will, on the 25th of
April, 1897, she is presumed to have known that as she owed
appellee individually for medical attendance from January 1,
1894, to April, 1895, and as surviving partner of Snead &
Martin for a number of professional visits to her at her home,
in Pittsylvania county, between April 1, 1895, and the date of
her will, it would be construed that the bequest she made to
appellee, as a mark of her esteem and appreciation of his fidelity
to her as her physician, was intended as a payment of what she
owed him. There is no sort of doubt that the testatrix intended
to recognize her indebtedness to appellee in such manner as that
the law (section 2922 of the Code) would imply a promise to
pay, and take the claim out of the operation of the statute, if the
statute then applied. But to what indebtedness did she refer?
There were two accounts due him of not long standing. For a
number of years preceding, she had paid him all she owed him
year by year, and it would indeed seem a violent presumption
that she had reference to two accounts, one with the firm of C.
& R. W. Martin, running from January 1, 1869, to May 1,
1880, and the other with appellee from May 1, 1880, to March
1, 1888, the two aggregating over $1,900.00, when neither of
them had ever been presented to her, and payments had been
made to appellee in money, and he had also gotten from her
farm produce whenever he desired to do so in satisfaction of
these accounts.

A number of decided cases have been cited by appellee's
counsel in which an acknowledgment of indebtedness was held
sufficient to take the case out of the operation of the statute, and
that the burden of proving that the acknowledgment referred
to some other debt than the debt sued for is on the debtor, but
we shall not undertake to review them, as they are very unlike
the case at bar. In those cases, there was but one debt to which

the acknowledgment could have referred, and there was no difficulty in identifying the debt referred to.

It was said by Mr. Justice Swayne in *Leffingwell* v. *Warren*, 2 Black, 599: " Statutes of limitations are now regarded favorably in all courts of justice; they are 'statutes of repose.' Usually they are founded in a wise and salutary policy, and promote the ends of justice."

In *Bell* v. *Morrison*, 1 Peters 360, Story, J., said: " The statute of limitations was intended to be, emphatically, a statute of repose. It is a wise and beneficent law, not designed merely to raise the presumption of payment of a just debt, from lapse of time, but to afford security against stale demands after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses."

Where there is a promise to pay, not specifying any amount, but which can be made certain as to the amount, extrinsic evidence may be received to ascertain the amount due. It is sufficient if the true amount is capable of being made certain. *Diuguid* v. *Schoolfield*, 32 Gratt. 808. Here, however, four accounts are presented as coming within the acknowledgment of indebtedness made by the testatrix in her letter of April 12, 1895, and in her will—two of them claimed to be due to appellee and the other two to firms of which he was a member. Two of them rightly characterized as "stale and antiquated," and the creditor admitting, after the death of the debtor, that he was unable to state the accounts so as to ascertain the correct amounts due thereon, and the debtor with ample means, through all the years the accounts ran, with which to pay them.

A new promise to remove the bar of the statute of limitations must be determinate and unequivocal; and, to imply a promise of payment from a subsequent acknowledgment, such acknowledgment must be an unqualified admission of a subsisting debt which the party is liable for and willing to pay. *Bell* v. *Morri-*

son, supra; Bell v. Crawford, 8 Gratt. 110; Aylett's Ex'or v. Robinson, 9 Leigh, 45; Sutton v. Burruss, Id. 381; Switzer v. Noffsinger, 82 Va. 523.

In Sutton v. Burruss, supra, Parker, J., referring to the principle laid down in Bell v. Morrison, and the authorities cited therein, said: " If this principle be correct, and I believe it to be uncontrovertibly so, no promise which is founded merely on the consideration of the old debt, and which still leaves the party exposed to the inconvenience which the statute was intended to remedy, ought to revive the old debt, and take the case out of the statute."

In Landis v. Roth, 109 Pa. St. 621, the Pennsylvania statute being similar to ours, it was held that any uncertainty, either in the acknowledgment or identification of the debt to which the acknowledgment may apply is fatal.

We are of opinion that the decree appealed from in so far as it allowed the claim of appellee against the estate of the testatrix, Helen C. Coles, for $927.00 as due to the firm of C. & R. W. Martin by account ending May 1, 1880, and that for $1,028.80, as due upon an account with him ending March 1, 1888, is erroneous, and it will be reversed and annulled, and the cause remanded to the Circuit Court with direction to expunge these two claims from the amount decreed to appellee against the estate of said testatrix.

Reversed.