# Wytheville.

M. E. QUACKENBUSH v. MARY FRANCES ISLEY, EXEC.

June 12, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*Montague & Holt*, for the plaintiff in error.

*Lett & Ford*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

A notice of motion for judgment was instituted by the plaintiff in error, Quackenbush, against Mary Frances Isley, executrix of W. P. Isley, deceased, for $2,200.00 with interest at six per cent per annum from October 4, 1928. The debt was evidenced by a negotiable note made by W. P. Isley on April 4, 1902, and

payable to Quackenbush at the Bank of Hampton two years after date. He indorsed the note and placed it in the said bank for the collection of the principal and interest. There was no conflict in the evidence and the case was submitted to the trial court on the following agreed statement of facts:

"That on April 4, 1902, W. P. Isley executed for value and delivered to M. E. Quackenbush the negotiable, promissory, homestead-waiver note, in the sum of twenty-two hundred dollars ($2,200.00), payable to the order of M. E. Quackenbush two years after date at the Bank of Hampton, Virginia, as alleged in the notice of motion; that W. P. Isley paid the interest on said note, in the sum of sixty-six dollars ($66.00), at the Bank of. Hampton, Virginia, semi-annually from the date thereof until April 4, 1928, at which time he paid the interest thereon to October 4, 1928; that all notations on the note relative to the payment of interest were made by the Bank of Hampton, Virginia; that this was the only business transaction between Quackenbush and Isley.

"It is further agreed that M. E. Quackenbush if present would testify that the said note and no part thereof has been paid; that no other note has been made evidencing the said debt; that the payment of interest aforesaid, in the sum aforesaid, on the note aforesaid, during the existence of said note and during the five years last past, prior to the death of Dr. W. P. Isley was paid in some instances by checks signed by W. P. Isley; that one of said checks bears date of April 5, 1926, and is in the handwriting of Dr. W. P. Isley, and bears the following notation on the face of said checks: 'M. E. Quackenbush Interest'; that another of said checks bears date of October 4, 1923, signed by W. P. Isley, bears the following notation: 'Interest M. E. Quack-

enbush'; that reserving the right to object to the admissibility of the parol evidence of Edith Gray, it is agreed that in the event this testimony is admissible that she will testify that she is an employee of the Bank of Hampton, Virginia, and that on April 4, 1928, Dr. W. P. Isley requested her to write a check payable to the order of the Bank of Hampton, Virginia, in the sum of sixty-six dollars ($66.00), which she did at his request, in her handwriting, and that he then and there signed the said check, stating verbally that said check was the interest that he owed on the note payable to M. E. Quackenbush and held by the Bank of Hampton, Virginia, for collection, and directed her to apply the same; that W. P. Isley died in the city of Hampton, Virginia, testate, on or about the 22nd day of April, 1928, leaving certain infant children; that Mary Frances Isley qualified as executrix under the will of W. P. Isley, deceased, before the clerk of the Circuit Court of Elizabeth City county, Virginia, on the 10th day of May, 1928; that demand for payment of said note has been heretofore made upon Mary Frances Isley, the executrix as aforesaid, which payment has been refused by said executrix, she contending that action on said note is barred by the statute of limitations.

"It is further agreed that the original note, the indorsements thereon and the renewal slips attached thereto, the checks made by W. P. Isley and all deeds of bargain and sale, deeds of trust, and deeds of releases and other writings of record in the clerk's office of the Circuit Court of Elizabeth City county, Virginia, pertaining to the matter in controversy, are in evidence subject to right to object, as to admissibility, on part of plaintiff and defendant, in the event that counsel for either party wishes to introduce the same. It is still

further agreed that a jury shall be waived and this matter shall be determined by the court.

"We agree to the foregoing statement of facts.

"(Signed) MONTAGUE & HOLT, *p. q.*"

"(Signed) LETT & FORD, *p. d.*

The defendant filed her plea of the statute of limitations, and when the case was heard on the agreed facts the trial court sustained the plea of the statute of limitations, and dismissed the notice of motion, and to this action of the trial court the plaintiff in error complains, presenting five assignments of error, which are all necessarily comprehended by the plea of the statute as they grow out of allied questions akin thereto. The plaintiff urges, with plausibility and with force, the inapplicability of the statute because: First: That interest on the said note was paid in advance and that by reason thereof the parties renewed and extended the life of the note for such additional period of time as the interest paid would purchase. In other words, by paying the interest in advance, delay in demanding the principal was paid for, therefore, no right of action could accrue during the said period of delay and thus the life of the instrument was extended. Second: That the payment of the interest by the maker was by checks, which in some instances bore on their face the fact that the amount for which the said checks were drawn were payments of the interest on the Quackenbush note and that such checks signed by Isley, the drawer, constituted facts from which a new promise to pay the principal sum might be implied.

The only additional matter not included in the foregoing statements, which is submitted by the assignments of error, is that Mrs. Edith Gray, an employee of the collecting bank, should have been considered as having testified that on April 4, 1928, Dr. Isley, after having

requested her to write a check for the interest, which she did, said that the check was the interest that he owed on the said note and that he directed her to so apply the same.

Undoubtedly if this suit had originated and been prosecuted in some other jurisdictions in the United States the judgment of those courts would have been in harmony with the decisions of the courts in the cases which have been cited with such diligence by counsel for the plaintiff in error.

But unhappily for his view of this case our statutes, and text writers, and the adjudications of our own court contravene their view of the immediate case.

The pertinent portion of section 5812 of the Code, the statute invoked by the plaintiff, is as follows:

"If any person against whom the right shall have so accrued on an award, or any such contract, shall, by writing signed by him or his agent, promise payment of money on such award or contract, the person * * may maintain an action for the money so promised. * * * An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise in the meaning of this section."

■ The statutory limitation ordinarily applying to a negotiable note or an instrument not under seal is five years (code 1919, §5810). Such limitation undoubtedly governs the case before us unless the contentions of the plaintiff are sound.

■ The reply brief of the defendant cites the pertinent authorities in Virginia and we need not go beyond or outside of them. The eminent Judge M. P. Burks, in his work on *Pleading and Practice*, 2 edition, section 207, page 370, says: "A limitation fixed by statute is arbitrary and peremptory, admitting of no excuse or delay beyond the period fixed, unless such excuse be

recognized by the statute itself. The legislature has full power to make any exception it chooses, or to refuse to make any at all * * *. If the statute makes exceptions, they exist; if not, they do not exist, as there is no limitation of actions at common law."

The same distinguished author, on page 403, says:

■ "A part payment of the principal or payment of interest does not, *at least in Virginia*, remove the bar of the statute." (Italics ours.)

■ The note in question was due and payable on April 4, 1904. It was not paid, the cause of action then accrued and the statute of limitation then began to run. The note was not paid on April 4, 1909, five years after it became due, thus in Virginia the bar of the statute of limitations applied, and we are asked to revive the note and infuse new life into it because of the circumstances revealed by the agreed statement of facts. This, we have no authority to do regardless of the position taken by the courts in similar cases in other States.

It is said in the case of *Templeman* v. *Pugh*, 102 Va. 441, 46 S. E, 474, 475:

■ "Statutes of limitations are statutes of repose, and *especially is this true as to the estates of the dead.* They are founded on sound public policy and should be so construed as to advance the policy they were designed to promote." (Italics ours.)

And again, in the case of *Coles* v. *Martin*, 99 Va. 233, 37 S. E. 907, 911, it is said:

■ "A new promise to remove the bar of the statute of limitations must be determinate and unequivocal, and to imply a promise of payment from a subsequent acknowledgment, such acknowledgment must be an *unqualified admission* of a subsisting debt, which the party is liable for and *willing to pay.*" (Italics ours.)

■ If we concede that the interest was paid in advance for a long period of years, for reasons not revealed, or for no reason at all except the whim or habit of the debtor, still we cannot allow this circumstance alone to cause us by our decision to fritter away the solemn and binding force of our statute.

Beyond controversy some of the interest payments were made by Isley, the maker of the note, by checks, which indicated by certain words that the amounts of the checks were for interest on the Quackenbush note. There is nothing unusual about this. Perhaps the great majority of checks that are drawn in the business world have upon them *indicia* of the purpose for which they are drawn. They are intended in many instances to serve as receipts. A check must bear the signature of the drawer else it would be invalid, but are we to construe a check which is paid by the bank upon which it is drawn and the sum which it represents paid to the creditor by his agent bank to be such an act as implies a new promise to pay the principal of a note barred by the statute of limitations? Can it be said to be the determinate and unequivocal promise of payment and an acknowledgment of the unqualified admission of a subsisting debt that our law requires and which our court has emphasized? We think not, and therefore we can do nothing but affirm the judgment of the trial court.

*Affirmed.*