## CREASY v. UNITED STATES.

District Court, W. D. Virginia, at Roanoke.

Jan. 31, 1933.

Carleton Penn, of Roanoke, Va., for plaintiff.

Joseph C. Shaffer, U. S. Atty., of Roanoke, Va.

PAUL, District Judge.

This is a suit upon a policy of war risk insurance, to which the government has filed a plea of the statute of limitations.

The statute as amended July 3, 1930 (U. S. C. title 38, § 445 [38 USCA § 445]), provides that no such suit shall be allowed unless brought within six years after the right under the policy accrued, or within one year after July 3, 1930, whichever is the later date. In the present case, the latter alternative is applicable. The statute further provides that the limitation upon the bringing of such a suit shall be suspended for the period elapsing between the filing in the Veterans' Bureau of the claim sued upon and the denial of the claim by the Director.

The meaning and effect of the provision as to suspension of the limitation during the period when the claim is before the Bureau is clearly. set forth in an opinion by Judge Chesnut, of the District Court for the District of Maryland, in the recent case of Hipkins v. United States, 1 F. Supp. 505, 506, with the reasoning and conclusions of which I fully agree.

· As stated by Judge Chesnut: "The suspension of a statute of limitations for a certain period is, in effect, 'time taken out,' for that period and adds the same period of time to the limitation provided in the statute. Applying the language of the statute to the facts of this case, we find it provided that the suit

must be brought within one year from July 3, 1930, plus the period of suspension. * * * "

█ Or to put the matter somewhat differently: When the veteran filed his claim before the Bureau prior to July 3, 1931, the statute of limitations stopped running when he filed his claim; it resumed again when the claim was denied; and suit must be brought within such length of time following denial of the claim as was equal to the unexpired portion of the limitation when the claim was filed. To illustrate: If a veteran filed his claim before the Bureau on June 3, 1931, the statute of limitations was suspended as of that date and with thirty days of the period of limitation unexpired; if the claim was denied on November 15, 1931, then the veteran had thirty days thereafter, or until December 15, 1931, within which to bring suit.

I have no doubt that the above is the proper construction of the statute; but in the present case it becomes necessary to go further and determine the time when a claim is to be considered filed before the Bureau and the time when it is denied.

In this case, according to the stipulated facts, the claim was mailed at Roanoke on July 1, 1931, and a stamp placed on it at the Veterans' Bureau indicates that it was received there on July 3, 1931. The communication denying the claim is a letter from the Veterans' Bureau, which is dated May 6, 1932, but which the veteran states was received by him at Roanoke on May 10, 1932, about noon, the envelope indicating that it was mailed in Washington on May 9th. On May 11, 1932, a copy of the plaintiff's petition in this suit was filed in the office of the clerk of this court at Roanoke; on May 13, 1932, a copy thereof was served on the United States attorney at his office in Roanoke.

The plaintiff contends that the claim is to be treated as filed with the Bureau as of July 1, 1931, the date on which it was mailed from Roanoke; and to be treated as denied on May 10, 1932, the date when he received the letter informing him of its denial.

It is necessary here to determine (1) whether a claim is deemed to be *filed* as of the date when the claimant mails it to the Bureau or as of the date when it is received by the Bureau; and (2) whether it is to be treated as *denied* as of the date when the proper officer of the Bureau set down in writing his denial or as of the date when the claimant received such writing.

█ On the latter of these questions, I have little doubt. It seems logical that the claim is to be taken as denied as of the date when the claimant is informed of the denial. The limitation on bringing suit is suspended while the claim is under consideration by the Bureau, but begins to run again as soon as the claim is denied; and the duty then rests upon the claimant to bring his suit within such time as remains of the period of limitation. If the act of denial of the claim imposes upon the veteran the condition that he must sue within a limited time thereafter, surely he cannot be expected to comply with this condition until such time as he has knowledge of the denial of his claim. In fact, he cannot sue until he knows that his claim has been denied and is no longer under consideration at the Bureau. Only after he has received notice of the denial can he allege the disagreement which is essential to the maintenance of a suit. I hold, therefore, that the claim is to be taken as denied on the date when the claimant received the letter informing him of the denial. It may be argued that it is unreasonable to suppose that a letter dated May 6th in Washington did not reach Roanoke, Va., until May 10th. But the time when the letter was received is a matter to be shown by evidence, and in this case the only evidence introduced is that the letter of denial was received on May 10th, inclosed in an envelope postmarked at Washington on May 9th. With the enormous correspondence handled in the Veterans' Bureau, it is not improbable that the letter was not mailed for a day or so after May 6th. On the evidence, I must hold that the plaintiff received notice of the denial of his claim on May 10th, as stated by him.

The remaining question is whether a claim is deemed to be filed with the Bureau on the day it is received there or on the day it is mailed by the claimant.

The statute (U. S. C. title 38, § 445 [38 USCA § 445]) provides that the limitation shall be suspended for the period elapsing "between *the filing in the bureau* of the claim sued upon and the denial of said claim by the director." (Italics supplied.) The use of the word "file" or "filing" in a legal sense is almost universally held to mean the delivery of the paper or document in question to the proper officer and its receipt by him to be kept on file.

"A paper or document is said to be filed when it is delivered to the proper officer and lodged by him in his office." Barber Asphalt Paving Co. v. O'Brien, 128 Mo. App. 267, 107 S. W. 25, 29.

"The filing of a paper is the delivery of it to the officer at his office, to be kept by him

as a paper on file, and the file mark of the officer is evidence of filing. * * *" Masterson v. Southern R. Co. (Ind. App.) 82 N. E. 1021, 1022.

There are numerous other cases holding that "filing" means the actual delivery to the officer or place designated, and that a paper is filed only at the time it is so delivered to and received by such designated officer. It is true that most of these cases deal with pleadings or other formal documents required to be filed within specified limits or with deeds and similar instruments filed for recordation. But there is no reason to assume that Congress, in its use of the term in this statute, intended it to have a significance other than that which is well and definitely established. By its choice of a word having a definite meaning, it must be assumed that Congress intended what the word imports. The statute, indeed, goes so far as to say that the limitation shall be suspended only from the time of the *"filing in the bureau"* of the claim sued on. Certainly this would seem to import that the limitation is suspended only from the time when the claim is actually delivered to, and received in, the Bureau. The language of the statute was apparently carefully and purposely chosen, and it has a plain and definite meaning which I am not at liberty to ignore.

When it is required that any notice be given or paper filed to or with a specified person or place, without provision as to the means of so doing, there rests on the person required to give such notice or file such paper the obligation to see that it is actually given or filed. If he contents himself with merely mailing such notice or other paper, he runs the risk that it may be delayed beyond the specified time or may be lost and never delivered at all. This risk is slight, for experience shows that, with rare exceptions, mail matter is transmitted and delivered without loss or delay. The general efficiency of our postal system is such as that the mailing of a letter furnishes a presumption of its receipt. But this is only a presumption of fact of an evidentiary nature, which may be disproven by other evidence. And, if it be clearly and indisputably proven that a notice required to be given or a paper required to be filed had never reached or come to the attention of the person for whom it was intended, it cannot be said that the person required to give the notice or file the paper had filled the obligation imposed on him by utilizing certain methods which ordinarily would have resulted in fulfilling this obligation, but which

on the particular occasion unquestionably did not. A person imposed with the duty of giving notice to another cannot be said to have fulfilled that duty when it is an established fact that the latter person never received the notice. This is, of course, without reference to cases where there is some provision of the statute setting forth the method whereby a notice may be given or a paper filed and wherein the prescribed method has been followed.

The essential requisite is that the notice shall be given to, or the paper filed with, a definite person or at a definite place, and no attempts to accomplish this requisite condition are sufficient if they fall short of doing so.

Congress has not here prescribed any particular method or means whereby a claim may be filed, nor has it said that the deposit in the mails of a claim shall be deemed a "filing in the bureau." On the contrary, it has indicated that the suspension of the limitation shall arise only when the claim has been actually received by those who are charged with considering it. It will not do to permit a claimant to make use of such means as he chooses to place his claim before the Bureau, whether it be by mail or some other method, and, when he has taken such action as he may happen to think adequate, to hold that the statute is complied with, whether the claim ever reached the Bureau or not. This would be plainly contrary to the language and intention of the statute.

I must hold, therefore, in the instant case that the suspension of the limitation on this action did not arise until July 3, 1931, the day when the claim was received at the Veterans' Bureau. This was the last day permitted by the statute for the institution of suit. The denial of the claim, as I have stated, was, in my opinion, on May 10, 1932.

When the claim was filed in the Bureau on July 3, 1931, there remained no unexpired portion of the period of limitation. This day (July 3rd) was the very last day upon which, except for filing his claim, the plaintiff would have been permitted to sue. While the claim was being considered at the Bureau, all rights were in suspension. But, when the claim was denied, on May 10, 1932, and the right to sue arose, the plaintiff was compelled to bring his suit on that same date, May 10th. There was no unexpired portion of the period of limitation which reverted to him.

I am unable to take into consideration parts of days, and it seems clear to me that, if the claim was filed with the Bureau on the

same day that marked the end of the period of limitation, it follows that, when the claim had been denied, any suit must have been brought on the date of such denial. To give the plaintiff even one additional day would be to give him one day longer than is accorded other veterans and one day longer than the statute provides.

I hold, therefore, that the plaintiff cannot be allowed to maintain this suit for the reason that it was instituted after the expiration of the period permitted by the statute for the bringing of such suits.

The plea of the government that the suit was not brought within the period of limitation involves another matter touching the manner and time of the institution of this suit.

It is provided in title 38, § 445, U. S. C., 38 USCA § 445 (by reference to title 28, § 763), that suit shall be begun by causing a copy of the petition to be served upon the district attorney of the United States in the district where suit is brought, and causing an affidavit of such service to be filed with the clerk of the court. In the instant case, a copy of the petition was filed in the clerk's office on May 11, 1932. Two days later, on May 13th, a copy of the petition was delivered to the United States marshal, who, on the same day, served the same on the district attorney at the latter's office in Roanoke. Counsel for plaintiff avers that he visited the office of the district attorney on May 11th, with the intention of serving the petition on the district attorney or of having the latter accept service, but that he was unable to find the latter or any of his assistants at the district attorney's office on that date. The offices of the clerk, of the United States marshal, and of the district attorney are all in the same building and on the same floor thereof.

It has been held (Reid Wrecking Co. v. U. S. [D. C.] 202 F. at page 317) that the requirement of service upon the district attorney is mandatory; that, suits against the United States being solely by its permission, the procedure prescribed in the grant of such permission must be literally followed, and that courts cannot permit deviation from the letter of such consent.

■■■ In this case, it was on May 13th that the petition was delivered for service to the officer (the United States marshal), by whom service of process is ordinarily made. It is true that counsel for the plaintiff had a perfect right to go to the district attorney and have the latter accept service, dispensing with service by the marshal; and he avers that he attempted to do this. Even if it be true that the district attorney and his assistants were absent from their office on May 11th, it does not appear that any particular effort was made to find them; and, although the United States marshal's office is within a few feet of that of the district attorney, the petition was not delivered to the marshal for service at that time, nor until two days later. The continual presence of the district attorney or of his assistants at a fixed office is not required nor to be expected. Attendance at courts throughout the district as well as other duties are such as that their absence from the office at times is necessary and to be expected. The rights of the plaintiff were not enlarged by this not unusual circumstance. It is admitted that the office was open and members of the clerical force were there at work. There appears no reason why service should not have been made by delivering a copy of the petition to a responsible member of this office staff or by serving a copy of it at the place of residence of one of the assistants to the district attorney who lived in Roanoke. It is not necessary to say here whether either of such methods of service would have been good. But I am prepared to say that the mere failure to find a prospective defendant when a casual effort to have him accept process is made does not extend the period of limitation for the service of such process until such later time as the plaintiff may choose to make another effort to find the defendant or to have a process serving officer find him.

■■■ As said in Quackenbush v. Isley, 154 Va. at page 412, 153 S. E. 818, 820, quoting Burks on Pleading and Practice: "A limitation fixed by statute is arbitrary and peremptory, admitting of no excuse or delay beyond the period fixed, unless such excuse be recognized by the statute itself."

■■■ In my opinion, the filing in the clerk's office on May 11th of a copy of the petition does not affect the situation. The statute provides that what shall be filed with the clerk is an affidavit showing service of the petition on the district attorney. No affidavit was filed touching either service or reasons for failure to make service; and lodging a copy of the petition in the clerk's office is not service upon the government in the manner prescribed. I am of opinion that no valid service was made until May 13th, and the suit was not instituted until that day. This question is of importance, for the reason that, even if I am in error in holding that the last day upon which suit could be brought was

May 10, 1932, it seems to me beyond question that it was barred prior to May 13th.

I have chosen to discuss both phases of the plea for the reason that, if an appeal is taken, it seems to me desirable and necessary that the appellate court should pass on both questions.