[No. 1970-1. Division One. July 23, 1973.]

14,766 SEATTLE VOTERS *et al., Appellants*, v. CARL G. ERLANDSON *et al., Respondents*.

*Lembhard G. Howell* and *Paul W. Chemnick,* for appellants.

*A. L. Newbould, Corporation Counsel, Gordon F. Crandall, Assistant, Christopher T. Bayley, Prosecuting Attorney,* and *Norman K. Maleng, Deputy,* for respondents.

FARRIS, J.—On September 11, 1972, the Seattle City Council passed ordinance No. 101389 which authorized the issuance of a special building permit for the construction of the King County multipurpose stadium. The Mayor signed the ordinance on September 15, 1972. Article 4, section 1 J of the Charter of the City of Seattle relating to referendum provides in part:

> The referendum may be invoked by petition bearing the signatures of the required percentage of qualified voters . . . which petition shall be filed with the city comptroller before the day fixed for the taking effect of the said law or ordinance, which shall in no case be less than thirty (30) days after the final favorable action thereon by the mayor and city council, . . . and the filing of such referendum petition as to any such ordinance . . . shall operate to suspend the taking effect of the same, . . .

The signature of the Mayor was the final favorable action on the ordinance in question.

Erection of the stadium at the King Street site had previously been authorized pursuant to RCW 67.28. The challenge here goes only to the construction standards; not to the authority of King County to construct a multipurpose stadium at the King Street site.

On October 13, 1972, petitions containing 8,379 signatures were properly filed with the city comptroller. On October 14, 1972, petitions containing an additional 6,376 signatures were addressed to Carl Erlandson, city comptroller, and

placed in the United States mail. They were received on Monday, October 16, 1972 at 8:04 a.m.; an October 14, 1972 cancellation date was on the postage. The comptroller had refused an earlier request by petitioners to open his office during nonoffice hours on October 14 or alternatively to post someone to receive the petitions.

It is not disputed that the 8,379 signatures filed on October 13 were not "the required percentage of qualified voters" necessary to suspend the effective date of the ordinance. It is also agreed that the remaining 6,376 signatures were not *received* by the comptroller until October 16, a date subsequent to the required 30-day period before the ordinance became effective. The question is whether the act of mailing the additional signatures under the terms and conditions herein described is sufficient to deem the petitions "filed with the city comptroller" as required by ordinance.

A similar question was before the court in *State ex rel. Uhlman v. Melton,* 66 Wn.2d 157, 401 P.2d 631 (1965), which held contrary to the position urged here by petitioners.

The petitioners are aware of that decision and although they quarrel with its result, they also argue that RCW 1.12.070 enacted subsequent to that decision necessitates a different result here. RCW 1.12.070 provides:

(1) Any report, claim, tax return, statement or other document required to be filed with, or any payment made to the state or to any political subdivision thereof, which is (a) transmitted through the United States mail, shall be deemed filed and received by the state or political subdivision on the date shown by the post office cancellation mark stamped upon the envelope or other appropriate wrapper containing it; or (b) mailed but not received by the state or political subdivision, or where received and the cancellation mark is illegible, erroneous, or omitted, shall be deemed filed and received on the date it was mailed if the sender establishes by competent evidence that the report, claim, tax return, statement, remittance, or other document was deposited in the United States mail on or before the date due for filing; and in cases of

such nonreceipt of a report, tax return, statement, remittance, or other document required by law to be filed, the sender files with the state or political subdivision a duplicate within ten days after written notification is given to the sender by the state or political subdivision of its nonreceipt of such report, tax return, statement, remittance, or other document.

. . . .

(3) If the date for filing any report, claim, tax return, statement, remittance, or other document falls upon a Saturday, Sunday or legal holiday, the filing shall be considered timely if performed on the next business day.

We hold that RCW 1.12.070 does not apply in the instant case. Assuming but not deciding that a referendum petition is a "document", it is not required by law to be filed. It is filed in the discretion of the people. The ordinance creating the right to referendum is plain and unambiguous. Article 4, section 1 J provides for filing of signatures with the city comptroller before the last day fixed for the taking effect of the ordinance. Nothing in the code has changed that requirement. There is no public notice until the mailed item is received and filed.

"The use of the word 'file' or 'filing' in a legal sense is almost universally held to mean the delivery of the paper or document in question to the proper officer and its receipt by him to be kept on file." Creasy v. United States, 4 F.Supp. 175; Weaver v. United States (4 CCA 1934), 72 F.2d 20.

*Wirtz v. Local 169, Hod Carriers'*, 246 F. Supp. 741, 750 (D. Nev. 1965). Here delivery followed posting by 2 days but receipt of mail properly posted is not always so reliable. The right of the public to know what the law is and when it goes into effect would be thwarted if mailing is deemed tantamount to filing. The legislature has removed any uncertainty by requiring "filing." The risk of loss or delay in transit is on the sender.

All rights with respect to the referendum petition had expired by October 16 when the required number of signatures were received for filing. Petitioners knew the filing date and recognized the necessity of filing as opposed

to mailing. They requested that the comptroller's office be opened so that the signatures could be filed. Any question regarding the necessity of opening the office during nonoffice hours has been resolved. It wás not required. *See State ex rel. McQuesten v. Hinkle,* 130 Wash. 525, 228 P. 299 (1924). *See also State ex rel. Uhlman v. Melton, supra.*

The ordinance became effective on the 30th day after its signing. Signatures received on the following day were of no force or effect.

Affirmed.

HOROWITZ and CALLOW, JJ., concur.