CLIFTON D. MAYHEW, INC.,
Appellant,

v.

BLAKE CONSTRUCTION COMPANY,
INC., Appellee.

No. 73-1135.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1973.

Decided July 26, 1973.

Mark P. Friedlander, Arlington, Va. (Friedlander, Friedlander & Brooks, Arlington, Va. on brief), for appellant.

Jack Rephan, Washington, D. C. (Danzansky, Dickey, Tydings, Quint & Gordon, Washington, D. C., on brief), for appellee.

Before WINTER, FIELD, and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This is a diversity case tried under Virginia law brought by Mayhew, Incorporated against Blake Construction Company. Blake was the prime contractor for the construction of United States Federal Office Building No. 7 in the District of Columbia. Blake subcontracted with Mayhew for the latter to perform the painting, finishing, and wall covering work on Building No. 7.

Article 3 of the subcontract provided that Mayhew would receive $140,000 for its work, subject, however, to additions and deductions for changes in the work according to the other provisions of the contract. Article 4(a)(1) provided that partial payments to the subcontractor shall be made within 5 days after the contractor received payment from the owners. Article 4(f) provided that Mayhew would not be entitled to final payment until forty-five days after the completion and acceptance of the entire project. Article 23 provided that Blake, without invalidating the contract, could require changes, additions, and/or omissions in the work, upon written orders to Mayhew. Mayhew was to present an itemized estimate of the value of the work involved and to perform the work if so ordered by Blake. Then, upon determination, by Blake, of the value of the work involved, Blake was to issue a change order to Mayhew, adjusting the contract amount accordingly. Furthermore, Mayhew was obligated to perform all work pertaining tó the project as Blake should direct. Article 28 provided that if any legal action arose between Blake and the United States and which concerned work performed by Mayhew, then Blake could select counsel of its own choosing to represent both parties' interests in any such action.

1262

During the performance of the subcontract, a dispute arose as to whether or not the painting of certain concrete floors was covered by the contract or whether it was extra work. The work was completed around July, 1967. Mayhew contended that it was extra work and that it should receive extra compensation for such work. The government contracting officer said it was covered by the contract. Mayhew then received Blake's permission to prosecute an appeal in Blake's name to the General Services Administration Board of Contract Appeals.[1] The Board rejected Mayhew's claim on November 30, 1967. Reconsideration of the decision was denied on October 24, 1969.

Subsequent to the Board's refusal to reconsider its decision, Mayhew sought Blake's permission to file a suit, in Blake's name, in the Court of Claims, contesting the Board's ruling. Alternately, Mayhew sought to have Blake include Mayhew's claim in any action Blake might bring in the Court of Claims concerning Building No. 7. Blake did institute an action in the Court of Claims regarding Building No. 7, but it refused to include Mayhew's claim in its suit. Blake also refused to allow Mayhew to use Blake's name so that it could institute its own suit in the Court of Claims. Mayhew then instituted the present action.

Mayhew's complaint here sought a mandatory injunction against Blake, requiring Blake to amend its complaint in the Court of Claims so as to include Mayhew's claim for extra work, or, in the alternative, sought damages from Blake for such work.

The district court denied the mandatory injunction sought by Mayhew. The court said that neither the contract nor equitable principles required Blake to assert Mayhew's claim before the Court of Claims. It said Mayhew could have insisted on a protective provision in the contract had it wanted to assure itself of an avenue of relief against the government. The court further held that Article 28 of the contract was not such a protective provision, but simply pertained to the right to select counsel and the sharing of costs in the event litigation should occur. It held the contract did not require litigation to be commenced at the request of the subcontractor.

We are of opinion that Mayhew has failed to demonstrate that Blake owed it any duty to assert its claim before the Court of Claims. Accordingly, we affirm the district court's denial of the mandatory injunction. Blake had no contractual duty to assert Mayhew's claim in the Court of Claims, and there is no such obligation imposed by law.

The district court also denied Mayhew's alternative claim for damages. It held that the claim for damages was actually a claim against the prime contractor for the alleged extra work; that any such claim Mayhew may have against Blake for this work arose in July, 1967 when the extra work had been completed; and that such claim was barred by the five-year Virginia statute of limitations, Va.Code of 1950, § 8–13, the present suit having been commenced on November 6, 1972.

We do not agree with the holding of the district court with respect to the statute of limitations.

In Virginia, the statute of limitations on a contract begins to run from the time payment is due. Of necessity, the due date depends upon the terms, either expressed or implied, of the contract in issue. Furthermore, the burden is upon the party pleading the statute of limitations as a defense to show by a preponderance of the evidence that the cause of action arose more than the statutory period before the action was instituted. The course of dealings

1. A subcontractor cannot sue the United States in its own name because there is no privity of contract between the two parties. The subcontractor can only sue the United States by suing it through the prime contractor. See United States v. Cleveland Electric Co. of South Carolina, 373 F.2d 585 (4th Cir. 1967).

between the parties may show their intent. Columbia Heights Sec. 3, Inc. v. Griffith-Consumer Co., 205 Va. 43, 135 S.E.2d 116 (1964); Quackenbush v. Isley, 154 Va. 407, 153 S.E. 818 (1930).

■■ As previously stated, Mayhew contended that the painting of certain concrete floors was an extra for which it should be compensated under the contract. When the contracting officer issued his decision that such painting was a contract requirement, and not extra work under the contract, Mayhew requested and received Blake's permission to prosecute an appeal, in Blake's name, from the contracting officer's decision to the Board of Contract Appeals. The Board denied Mayhew's appeal on November 30, 1967. It has not ·been alleged, nor are we willing to ·assume, that Blake would have allowed Mayhew to use its name to assert a spurious claim before the Board of Contract Appeals. Therefore, of necessity, so far as the action before the Board of Contract Appeals was concerned, both Blake and Mayhew maintained the position that the painting of the floors in question was an extra under the contract and that the contract price should be raised to pay for it. The earliest Blake could have withdrawn from this position was November 30, 1967, when the Board rejected the contention that the painting was an extra for which Blake and Mayhew ·were entitled to extra compensation under the contract. Apparently, Blake later did withdraw from this position because it subsequently refused to allow Mayhew to use its name to litigate the matter in the Court of Claims or to include Mayhew's claim in its suit against the government in the Court of Claims. Had Blake complied with Mayhew's request to include the disputed painting claim in its suit in the Court of Claims, or allowed Mayhew to litigate in its name in that court, then Mayhew could have received a judicial determination of its claim for extra work and, almost certainly being in privity with Blake, would have been bound by the result. See Brunner v. Cook, 134 Va. 266, 114 S.E. 650 (1922); Patterson v. Saunders, 194 Va. 607, 74 S.E.2d 204 (1953); DuPont v. Sylvania, 122 F.2d 400 (4th Cir. 1941); Simon v. Maryland Casualty Co., 353 F.2d 608 (5th Cir. 1965). Blake, however, is now attempting to deny Mayhew its right to receive a judicial determination in any forum of its claim for extra work. This, on the narrow questions we consider, it may not do on the record here presented, however scanty it may be, because it does not show Mayhew's claim is barred by the statute of limitations.

Mayhew's claim on the record before us is not so barred because it could not have sued Blake any earlier than November 30, 1967. If Mayhew had attempted to sue Blake prior to November 30, 1967, the positions of Blake and Mayhew until that time being synonymous, it would have been met with the valid defense that no cause of action could accrue to Mayhew, even though the disputed work had been completed pursuant to Blake's order, until final payment was due it under Article 4(f) of the contract, or partial payment was due it under Article 4(a)(1). Since both Blake and Mayhew were contending that the contract price should be adjusted upward because the painting was extra work under the contract, the amount of the final, or a partial, payment for such work could not have been determined any earlier than the Board's decision on November 30, 1967.[2]

We are accordingly of opinion that November 30, 1967 is the earliest May-

---

2. The general contract is not a part of the record. We presume, as is common in the construction industry, that the payment and partial payments referred to in Article 4(a)(1) of the subcontract are those received from the owner and general contractor on account of estimates submitted at various stages of construction. The government not having agreed that the disputed work performed by Mayhew was to be extra work under the contract, no partial payment could have been made for it by the government prior to November 30, 1967.

hew could have brought suit against Blake, and must vacate the decision of the district court on this point and remand the case for further proceedings not inconsistent with this opinion.

Affirmed in part, vacated and remanded in part.