## Richmond

GLADYS MAE FORD

v.

HERBERT F. SWEET, JR.

December 3, 1982.

Record No. 801395.

Present: All the Justices.

*Philip deB. Rome (Williams, Mullen, Christian, Pollard & Gray,* on brief), for appellant.
*Jean E. Ritchie (Ritchie & Ritchie,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

This action was initiated by Gladys Mae Ford against Herbert F. Sweet, Jr., to recover balances allegedly remaining unpaid on loans made by Ford to Sweet. For his defense, Sweet asserted that Ford's claim was barred by the applicable statute of limitations. Based on the stipulated facts, the trial court agreed with Sweet and entered summary judgment in his favor. On appeal the question is whether the trial court erred in ruling that Sweet's handwritten statements failed to revive the obligations.

Ford's daughter and Sweet were married in 1948; they were divorced by final decree entered May 9, 1979. In June of 1967, Sweet borrowed from Ford $900 evidenced by a written memorandum signed by Sweet. The loan was payable upon the closing of a lease; the lease was closed but the loan was not paid. On or before August 29, 1967, Sweet borrowed from Ford additional amounts aggregating $5,899, payable on demand, evidenced by a written memorandum signed by Sweet showing payment of $50 on account on July 4, 1971, leaving an unpaid balance of $5,849. Sweet and his wife, Gladys F. Sweet, gave Ford a note dated October 9, 1977, which stated that the amount of $1,150 was payable from the proceeds of sale of their residential property.

In March and April of 1979 there was an exchange of correspondence between Ford's counsel, Philip deB. Rome, and Sweet concerning the loans. In a letter to Sweet dated March 13, Rome demanded either repayment or formulation of a plan for repay-

ment of the loans "evidenced by the enclosed writings" in Sweet's hand. On the back of this letter Sweet replied that he had no job and could not promise to make payments until he was employed. He wrote that he would communicate with Rome further after solving some of his other problems and would discuss what he could do after he obtained employment or sold the house. He requested that Rome deal directly with him rather than through an attorney.

By letter dated March 22, Rome asked Sweet to agree in writing to pay the Ford loans from the proceeds of sale of the residence. At the bottom of this letter Sweet replied that he would be away training for a job until April 2, but would call the attorney upon his return. The next correspondence between the two was a letter dated April 3 from Rome to Sweet which "confirmed" that Sweet's wife was obligated for one-half the amount of $1,150 payable to Ford under the note of October 9, 1977, and Sweet was liable for the other one-half. Although the record does not show what prompted this letter, the logical inference is that it was a confirmation of some discussion that Ford and Sweet had concerning the $1,150 note.

By letter dated April 5 Rome gave notice that since Sweet would not "agree to any specific terms for the repayment of Mrs. Ford's loans," suit for collection would be filed unless he agreed to a written commitment as "previously requested." Crucial to our inquiry is Sweet's response to this final demand for repayment. Sweet returned the April 5 letter to Rome with the following notation written at the bottom of the page:

Dear Mr. Rome and Mrs. Ford:

I will be able to start paying a minimum of 50.00 a month on this account starting my first pay day after May 15, 1979. (1 week later). I will increase the payment as I am able. I am right down to nothing right now.

If this is not o k you will just have to take whatever harsh action you feel necessary, but this is the very best promise I can make & keep right now.

Thanks for everything,

Herb

On April 6, 1979, Ford filed against Sweet a motion for judgment containing two counts, one claiming $900 for an unpaid loan

(that of June, 1967), and the other claiming $5,849 for an unpaid balance on other loans (those shown on the August, 1967, memorandum), thus alleging a total indebtedness of $6,749. In June of 1979, Ford filed an attachment against Sweet's property alleging that Sweet owed her the total amount of $7,324, comprising the amount of $6,749 sought in the motion for judgment and the sum of $575 for which he was liable on the 1977 note. By order entered June 4, 1980, the trial court, noting that the claim for $575 had been paid, awarded summary judgment to Sweet, over Ford's objection, as to the claim for $6,749. Ford's motion to set aside and vacate this order was denied.

Ford contends that her claim is not barred by the applicable statute of limitations because it was revived pursuant to the following provisions of Code § 8.01-229(G)(1):

> If any person against whom a right of action shall have accrued on any contract, other than a judgment or recognizance, shall, by writing signed by him or his agent, promise payment of money on such contract, the person to whom the right shall have accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.

Relying on *Nesbit v. Galleher,* 174 Va. 143, 5 S.E.2d 501 (1939), in which we construed statutory provisions nearly identical to those set forth above, Ford says that Sweet's written statements to Rome constituted a promise to pay within the purview of the statute. We agree.

In *Nesbit,* Galleher, an attorney, wrote to Nesbit, his client, requesting payment of a bill for $1,000 for legal services rendered several years before. At the time he wrote to Nesbit, Galleher was indebted to her in the amount of $500 evidenced by his note which Nesbit had endorsed and placed at a bank for collection at maturity. Nesbit answered Galleher's letter as follows:

> Replying to your letter of the fifth, I can appreciate you will be at much expense running for office, and I wish you success. I couldn't find the amount of your fee in ready

money, as my credit at the bank is taxed and I cannot anticipate my income, I can assume your note at this bank in payment of yours and my obligation. . . .

174 Va. at 146, 5 S.E.2d at 502.

When Galleher later sued Nesbit for the sum of $1,000, less a $500 credit, Nesbit pleaded the statute of limitations, which, unless her written statement revived the obligation, would have been a complete bar to the action. On appeal, we affirmed the trial court's rejection of the plea of limitations. We held that, although there was no direct promise by Nesbit to pay the bill, her letter constituted an acknowledgment in writing from which a promise to pay may be implied. We approved the principle that an unequivocal admission that the debt is due and unpaid, absent any indication of an intent not to pay, gives rise to an implied promise to pay which binds the promisor. 174 Va. at 148, 5 S.E.2d at 503.

Sweet says that *Nesbit* is distinguishable from the present case because in *Nesbit* there was only one obligation and Nesbit's letter was an unqualified promise, whereas here there was a question concerning which obligation Sweet's reply referred to and his promise was qualified. He relies instead on *Coles* v. *Martin,* 99 Va. 223, 232, 37 S.E. 907, 911 (1901), which, like this case, involved several debts rather than only one, and in which we held that the alleged new promise was too uncertain to revive the old debts.

The dispositive factor in both *Nesbit* and *Coles* is the certainty of the reference to the debt sought to be revived. The same rule was applied in each case but the facts dictated opposite conclusions of law. In *Coles,* we held that the new promise was not sufficient to overcome the bar of the statute of limitations when the particular debt to which the promise referred was uncertain. *Id.* In *Nesbit,* we held that the subsequent acknowledgment of the indebtedness, though implied, was unqualified and the new promise to pay implied from that acknowledgment repelled the statute of limitations. 174 Va. at 149, 5 S.E.2d at 503.

Crucial factual differences between *Coles* and this case render Sweet's reliance on *Coles* unpersuasive. In *Coles,* a doctor filed a claim against the estate of his deceased patient for the amounts of two running accounts. The doctor sought to avoid the otherwise applicable bar of the statute of limitations by arguing that a letter he had received from the patient several years before her death

contained a new promise. In the letter, the patient wrote, "Let me have my bill, and you shall have what I owe you in a short time." 99 Va. at 227, 37 S.E. at 909. At the time of the letter the patient was indebted to the doctor on several running accounts — one for the most recent year, one which was closed seven years before, and one which was closed 15 years before. 99 Va. at 230, 37 S.E. at 909.

We held that the letter failed to identify the two older debts with sufficient certainty to revive them. 99 Va. at 231-33, 37 S.E. at 910-11. We reasoned that it would be a "violent presumption" to conclude that the patient referred to the older debts, rather than only the most recent account, especially since no bills for the older accounts had ever been presented to her. Furthermore, the patient had paid some money on the older accounts and the doctor had taken farm produce from the patient whenever he desired to do so in satisfaction of those accounts. 99 Va. at 231, 37 S.E. at 910.

Significant facts present in *Coles* are thus wholly absent in this case. In *Coles,* the old debts had never even been presented to the debtor. In this case, actual memoranda of the loans now sued upon were enclosed with the demand for payment which initiated the correspondence that led to Sweet's promise only weeks later. Moreover, there is no course of dealing between the parties which suggests, as in *Coles,* that the old debts may have been satisfied in cash or in kind.

Sweet argues that he was referring only to the $1,150 note when he wrote the notation on Rome's letter of April 5. That letter, however, referred to the "loans" rather than to a single obligation. Sweet's argument would be plausible if his notation had been made on Rome's April 3 letter relating to the 1977 note, but he made it in response to the April 5 request for a written commitment to repay all the obligations.

Sweet characterized his response as a "promise," the only one he could make and perform at that time. It may be more accurately described as an offer to pay not less than $50 each month on account of the total indebtedness, just as Nesbit's response was an offer to assume Galleher's note in payment of her obligation to him. Neither offer was a direct, express, unequivocal promise to pay the obligation, but each was an unqualified, unconditional, implied acknowledgement of the entire indebtedness.

Finally, we note that although the correspondence in this case involved three written replies by Sweet to demands for payment of the "loans" or "debts," Sweet never challenged the validity or amount of the debts now sued upon. This failure to question the debts under consideration further supports the conclusion that the debts were impliedly acknowledged. *Nesbit v. Galleher,* 174 Va. at 149, 5 S.E.2d at 503.

The offer of Sweet was not to pay less than his total indebtedness, but merely to pay it in monthly installments. It is true, as Sweet says, that his offer of installment payments was not accepted. But Ford's action was not on Sweet's "promise" to pay in installments, but on the new promise, implied from his acknowledgment, to pay the original obligation. We construe Sweet's statement on the April 5 letter in the same manner that we construed the debtor's response in *Nesbit,* as an acknowledgment of the indebtedness from which arose an implied promise to pay that removed the bar of the statute of limitations.

We will reverse the judgment of the trial court and enter judgment for Ford in the amount claimed in her motion for judgment.

*Reversed and final judgment.*