## JACOBS v. HOEY.
### No. 279.

Circuit Court of Appeals, Second Circuit.

June 30, 1943.

Weisman & Grant, of New York City (Arnold M. Grant, Herman L. Weisman, and Wolfe R. Charney, all of New York City, of counsel), for plaintiff-appellant.

Mathias F. Correa, U. S. Atty., of New York City (Bruno Schachner and R. Lewis Townsend, Asst. U. S. Attys., both of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The decedent, Aaron E. Norman, died on July 1, 1936. His will was admitted to probate by the Surrogate of New York County and letters testamentary were issued on August 3, 1936, to the five execu-

tors named in the will, three of whom were members of the decedent's family. On December 17, 1936, the five executors agreed with one another in writing, subject to the approval of the Surrogate, that the plaintiff, one of the executors, would receive 2% for his commissions as executor, that John S. Borg, another of the executors, would receive 1⅕% for his commissions, and that the other three executors, who were members of the decedent's family, would waive their commissions. About the time the above agreement was made, the plaintiff knowing that the estate amounted to about $3,000,000 and that the commissions he would receive, if he faithfully performed his duties as executor, would equal about $60,000, wished to obtain a payment of $20,000 on account of the commissions. His co-executors agreed to the payment of such an advance "subject to opinion and approval by counsel." He thereupon conferred with counsel for the executors as to his right to receive such an advance and was advised that an advance on account of commissions, while irregular, had been held in a recent decision not to render the executor chargeable with interest where the estate had not been prejudiced. Accordingly the other executors approved payment of $20,000 to the plaintiff in 1936, and a further payment of $19,500 in 1937, in consideration of his agreement to indemnify them against any liability which might result therefrom.

In connection with the payment on account of commissions made in the year 1937, counsel for the executors wrote a letter of advice to each of the executors which concluded thus: "In summary, we wish to state that payment of commissions to executors prior to an accounting is frequently done, and there is no illegality in making such payment. The only risk that is run is the risk that the Surrogate will not allow the statutory commissions, which disallowance occurs only in the event of negligent or dishonest performance of duties by the executors."

It is at least true that the prophecy of counsel was borne out by the event for, when the executors had their first accounting in the year 1938, the Surrogate, by decree of December 27, 1938, allowed the sums taken as commissions in 1936 and 1937 without charging interest against the plaintiff because the payments had been made in advance of a judicial settlement.

The plaintiff commingled the payments he had received on account of commissions in 1936 and 1937 with his own funds and treated them both on his own books and on the books of the estate, which were kept under his direction, as payments of commissions. In his income tax returns for those years he included the payments as though they were executor's commissions earned at the time he received the advances, and in the returns for the estate he deducted as administration expenses that part of the commissions he had received which was attributable to income.

In 1938, the plaintiff incurred a loss in the liquidation of the American Portraiture Corporation, of which he was owner. This capital loss he would have been able to offset against the commissions he had received in 1936 and 1937 if they were properly only attributable to the year 1938 in which they were allowed by the Surrogate. He had been advised by counsel that there was reason to believe that the tax authorities would insist that the payments on account of commissions ought to have been made during the year 1938, when they were formally allowed by the Surrogate, rather than in the years when they were taken. With reference to such payments, counsel advised the plaintiff that, if the taxing authorities should claim that they ought to have been included in the return for 1938 income, any overpayment of taxes that had been assessed on the sums received as commissions during the prior years could be cured either by filing amended returns, or by bringing an action for refund.

The plaintiff filed claims for refunds of the taxes that had been assessed against him on the receipts of commissions in 1936 and 1937, which he had included in his returns of income for those years. The ground he asserted for recovery was that the receipts represented loans to him, rather than payment for services. He also, in 1939, filed an income tax return for 1938 in which he included the sums received as commissions in 1936 and 1937. Upon the rejection of the refunding claims by the Commissioner, the plaintiff brought the present action to recover $9,835.74 alleged to have been unlawfully collected because of the $20,000 he had received from the Norman Estate in 1936, and $7,188.19 alleged to have been unlawfully collected because of the $19,500 he had received in 1937. He took these steps both

to secure the anticipated advantage of offsetting the sums he had taken as commissions in 1936 and 1937 by the losses he incurred in 1938, and also to protect himself against any claim the Commissioner might assert that those sums could only be imputed to income for 1938, the year in which they were allowed by the Surrogate. The District Court dismissed the complaint on the ground that the payments made in 1936 and 1937 on account of commissions, were income for the years of their receipt and taxable as such for those years. We think the decision of the District Court was right and should be affirmed.

■ The appellant claims that the payments made to him by the estate were nothing more than loans until the Surrogate had approved them. There are various decisions in the New York courts to the effect that an executor cannot take commissions for management of the estate until they are allowed by the court. But, in spite of this, the Court of Appeals has declined to disturb such a payment or to charge the executor with interest where the estate has been honestly and properly managed. Beard v. Beard, 140 N.Y. 260, 35 N.E. 488. Moreover, it has been generally held that such payments received under claim of right, and where the likelihood of not retaining them is slight, are a part of "gross income" which is defined in Section 22 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 22, as including "compensation for personal service * * * of whatever kind and in whatever form paid."

North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, was an action to recover income taxes unlawfully imposed. The government had sued to recover possession of certain lands that were claimed by the North American Oil Corporation. A receiver of the lands had been appointed who paid over to the North American Oil, under a decree of the court, certain profits he had realized through operating the oil properties. The United States appealed from the decree and the appeal was not determined until a year later than the one in which the profits were distributed. The Supreme Court held that North American Oil must return the income for the year in which it was received notwithstanding the fact that the pendency of the appeal rendered the ultimate right to retain the profits doubtful. Justice Brandeis remarked: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." 286 U.S. at page 424, 52 S.Ct. at page 615, 76 L.Ed. 1197. To the same effect is the decision of the Sixth Circuit in Board v. Commissioner, 51 F.2d 73, where a payment received as profits under claim of right was attacked in a stockholders' suit on the ground that the position of the recipient as a corporate director rendered the payment to him illegal. There, as in the present case, the recipient's right to retain the payment was later established through litigation. See, also, United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 403, 47 S.Ct. 598, 71 L.Ed. 1120; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725.

■ In National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93, an officer of a corporation had mingled bonds representing profits on a corporation contract with his own, cashed coupons therefrom, and turned over the bonds to his son with instructions to deliver them to the corporation in case of his death or on his order. But he only gave these instructions to his son after a Congressional Committee had begun to investigate the contract. Though the bonds belonged to the corporation in the sense that it could have reclaimed them, they were found to have been taken by the taxpayer as an illicit commission yet to have been properly included in his income tax. Similarly, a lender upon usurious interest, if on an accrual basis, must include his usurious profits in his return even though he may be allowed to deduct them as a loss if the borrower should reclaim them. Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122, 123. Groner, J., there remarked that the result depended "not so much * * * upon the legal right to enforce collection as upon the existing probability" of the excessive interest being received. In Blum v. Helvering, 64 App.D.C. 78, 74 F.2d 482, Judge Groner enunciated a similar view as to the taxability of earnings which might be depleted by losses in subsequent years, saying (64 App.D.C. at page 80, 74 F.2d at page 484): "Hence it is now the settled law that if a taxpayer derives a profit

without any restriction as to its disposition, he has received income and is required to return it in the year when received, even though it may still be claimed he is not entitled to retain the money and even though he may be ultimately adjudged liable to restore its equivalent." See, also, Mitchell v. Commissioner, 2 Cir., 89 F.2d 873; Saunders v. Commissioner, 10 Cir., 101 F.2d 407; Griffin v. Smith, 7 Cir., 101 F.2d 348.

In the case at bar there was no reasonable likelihood that the plaintiff would be called upon to return the sums that had been paid as commissions. The administration was faithfully carried out and the interested parties seem to have had amicable relations. If any part of the sums withdrawn were reclaimed, it is not unlikely that the taxpayer would have been allowed to deduct a loss from his income for the year in which he made the payment. Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122, at page 124.

Though we should take the extreme view that under strict legal principles the plaintiff tortiously interfered with assets when he received advance commissions, he received them with the permission of his co-executors and members of the decedent's family who were chiefly interested in the estate and under a claim of right. As we said, per L. Hand, J., in National City Bank v. Helvering, 2 Cir., 98 F.2d 93, at page 96: "If he holds with claim of right, he should be taxable as an owner, regardless of any infirmity of his title; no other doctrine is practically possible, and no injustice can result."

For the above reasons the judgment is affirmed.