# Richmond

CHRISTINE MELVIN BICKERS v. FRANCES YAGER BICKERS PINNELL, ET AL.

October 14, 1957.

Record No. 4689.

Present, All the Justices.

The opinion states the case.

*A. Garland Williams*, for the appellant.

*Ellsworth Wiltshire* (*Wiltshire & McCaul*, on brief), for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This case presents the question whether or not Frances Yager Bickers Pinnell has duly established a valid and enforceable claim against the estate of her late father, Myron Bray Bickers.

Myron Bray Bickers, sometimes hereinafter referred to as Bickers, died testate on June 15, 1952. In his last will and testament, he named the Shenandoah Valley National Bank of Winchester, Virginia, as executor of his estate. His will was duly probated and the Bank qualified as the executor thereunder.

On April 28, 1954, the Commissioner of Accounts for the Corporation Court of the City of Winchester, hereinafter referred to as the Commissioner, at the request of the executor, and after giving the notice required by law, proceeded to hear proof of the debts and demands against Bickers' estate. Virginia Code, 1950, §§ 64-161, 64-162 and 64-163.

Frances Yager Bickers Pinnell, hereinafter referred to as Mrs. Pinnell, filed with the Commissioner her written claim, duly sworn to, as a general creditor in the sum of $4,500, with interest at 4% per annum from February 1, 1952, until paid. Code, § 64-163. The claim

was based upon a loan alleged to have been made by Mrs. Pinnell to her father in the sum of $4,500, evidenced by a note of her father, which had been lost or misplaced.

After a hearing, the Commissioner allowed the claim, thereafter returning with his report a transcript of the evidence and the exhibits to the Clerk's Office of the Corporation Court of the City of Winchester. Code, § 26-32.

Christine Melvin Bickers, widow of the testator, hereinafter referred to as Mrs. Bickers, and the executor excepted to the Commissioner's report allowing the claim. The Corporation Court for the City of Winchester overruled the exceptions and confirmed the Commissioner's report. Code, § 26-33. Thereafter, upon petition of Mrs. Bickers, we granted her this appeal.

On appeal, Mrs. Bickers assigns three grounds of error to the action of the trial court. First, she says that the Commissioner of Accounts' office was not a proper forum for making proof of a lost instrument, because Code, § 8-157 designates the proper jurisdiction; second, she contends that the evidence did not justify the Commissioner in finding that Bickers was indebted to his daughter; and, third, that the debt, if any, was barred by the statute of limitations, Code, § 8-13, and the evidence was insufficient to establish a new promise of payment. Code, § 8-25.

The record contains the testimony of three witnesses at the hearing before the Commissioner and the exhibits hereinafter referred to.

Mrs. Pinnell was injured in an automobile accident in 1939, when she was sixteen years of age. A settlement for her damages was made about two years later in the sum of $5,000. Her father, Myron Bray Bickers, qualified as her guardian and received the money, out of which counsel for Mrs. Pinnell was paid $500 for his services. She testified that after her father received the money, he said to her that if she did not need it and would lend it to him, he could use it; that she replied "All right;" that he said he was going to give her a note for the money, so that "in case anything ever happened to him, then people would know that he owed her" that sum; that she did not remember receiving the note but because of the fact that her father said he had given her the note, and several times referred to that fact, she "felt" that it had been given to her; that when she was married in 1946, her father asked her if she wanted him to pay the $4,500 note, and she told him that she did not need the money at that time; that he then started sending her $90 twice a year for interest; and that she

had received checks for such sums regularly up to and including November, 1951, which paid the interest to February, 1952. She then identified three checks of her father, which respectively contained the following endorsements:

Check dated February 2, 1950, "Int. Bond $4500 @ 4% to Aug. 1, 1950."

Check dated August 1, 1950, "a/C Int Bond 4500 to Feb. 1, 1951."

Check dated Nov. 12, 1951, "Int Bond $4500.00 to 2/1/1952 @ 4% full."

On the back of the November 12 check, above the signature of Mrs. Pinnell, this appears, in the handwriting of Bickers: "Recd a/c Interest Bond $4500 to 2/1/1952, 4%."

Mrs. Pinnell said that her father died from an incurable disease, and that within the last month before his death, he discussed with her his obligation to her; that he told her the Shenandoah Valley National Bank was going to handle his estate but that he didn't know what the estate would amount to; and that he had made certain arrangements for her sisters, and that he owed her $4,500, and his estate would pay her that sum. She then told him that she was unable to find the note, and he was upset; that she didn't press the matter because of his illness, and he told her to have her husband look for the note, because she should have marked on it the interest which had been paid by him; that she and her husband had diligently searched for the note, but could not find it; and that her husband, who attends to her business affairs, also took up the matter further with her father.

Charles W. Pinnell, Jr., husband of Mrs. Frances Pinnell, testified that he handled all of the business affairs of his wife, and that he often discussed with his father-in-law the business affairs of the latter. Bickers, approximately two weeks before his death, told him that he owed his daughter $4,500, evidenced by a note, and did not know when it would be paid; but "that it would be paid before any settlement was made to any of his beneficiaries;" that Bickers twice told him he had written a letter to Howard A. Holland, the Trust Officer of the Shenandoah Valley National Bank, stating that "he owed Frances $4,500.00; and that it was to be paid before any final settlement was made." Pinnell also said that Bickers, though sick, was in very good mental condition.

Howard A. Holland, Trust Officer of the Shenandoah Valley National Bank, said that he knew Bickers had made a will naming his Bank as executor of his estate; that he visited Bickers in a hospital

within a month of his death; and that Bickers then told him "he owed his daughter, Frances, $4,500.00, on which he had paid the interest regularly and that we, in settling his estate, should pay that sum; "that about a week later he received, as Trust Officer of his Bank, an undated letter in the handwriting of someone other than Bickers but signed by Bickers, which expressed pleasure for the visit of Holland, gave him directions concerning his burial, the removal of the body of his first wife, and the following information about his obligation to Mrs. Pinnell:

"Also, my daughter, Frances Yager, has in her possession somewhere a note of $4,500.00. I paid her the interest on this note all along, and it is now paid up to February, 1952. The reason of this is I asked her and she does not know where the note is, and she says she has never credited my interest on it. These interest payments have always been made by checks drawn on the Bank of Greene, Inc.

(Signed) Myron B. Bickers."

A certified copy of the final settlement of the account of Bickers, as guardian of the estate of his daughter, Frances, was exhibited. The report was filed on October 25, 1946, and there being no exceptions thereto for a period of more than thirty days, was confirmed and recorded on November 25, 1946. Code, § 26-33. The report shows the receipt of the $5,000, in settlement of the claim of Mrs. Pinnell and some other funds, and disbursement of $4,788 to Mrs. Pinnell by a check dated February 1, 1946, in full settlement of his account.

[■] At the hearing before the Commissioner of Accounts, counsel for Mrs. Bickers argued that there appeared to be an attempt to prove a lost instrument, and objected to such proceeding on the ground that the proper method of proving such an instrument would be by a suit in chancery, or by an action at law. He objected to the admission of the testimony and exhibits presented for the purpose of showing the tolling of the statute of limitations and a new promise to pay the obligation asserted. He also called the "attention of the Commissioner to the fact that there is pending in the Corporation Court of the City of Winchester a chancery suit in which it was put in a prayer of the bill that the accounts of the executor would be settled in that suit." However, no motion was made to transfer the matter to that suit, nor was the record of that suit offered in evidence.

The reference appears to have been to the suit of *Christine Melvin Bickers* v. *Shenandoah Valley National Bank of Winchester, Executor, Et Al.,* 197 Va. 145, 88 S. E. 2d 889, decided by this Court Sep-

tember 14, 1955. The principal question presented in the appeal in that case was whether or not an instrument purporting to be an *inter vivos* trust was valid. We are told in the brief of counsel for Mrs. Pinnell, without denial, that no attempt was made by Mrs. Bickers in that cause to have a reference to a commissioner in chancery to settle the executor's accounts and to determine the claims against the testator's estate, either before or after our determination of the question before us.

There is no merit in the contention that because the note evidencing the debt was lost, Mrs. Pinnell was required to bring an action under Code, § 8-517 against the executor, and, precluded from proving her claim before the Commissioner.

Code, § 8-517 was enacted to authorize the maintenance of an action at law "on any past due lost bond, note, or other written evidence of debt," and to require a proper indemnity for the defendant's protection. Prior to its adoption, an action at law could be maintained on lost bonds and lost choses in action of any kind, provided they were not negotiable. If the paper was negotiable, and there was ample proof that it was destroyed, an action at law could likewise be maintained; but upon negotiable paper which was simply lost or mislaid and not destroyed, no action at law would lie. In such actions as were allowed no indemnifying bond was required. Burks Pleading and Practice, 4th Ed., § 338, pages 338 and 339.

It may be noted that Mrs. Bickers did not request, as she might have done, that the trial court, upon approving the Commissioner's report, require the execution of a bond of indemnification.

Code, § 8-517 does not expressly or impliedly deprive a commissioner of accounts of the express and specific authority conferred on him under sections 64-161, 64-162 and 64-163 to receive proof of debts and demands against a decedent or his estate in the settlement of the accounts of a personal representative of a decedent. The object of the above three named sections is to afford a prompt, certain, efficient and inexpensive method for the settlement of accounts of personal representatives and the distribution of estates. *Carter* v. *Skillman,* 108 Va. 204, 60 S. E. 775; *Nicholas* v. *Nicholas,* 169 Va. 399, 193 S. E. 689.

Code, sections 64-161, 64-162 and 64-163 specifically empower and direct "Any commissioner of accounts, who has for settlement the accounts of a personal representative of a decedent shall, when requested so to do by such representative or any creditor, legatee, or

distributee of the decedent" to receive proof of debts and demands against the decedent or his estate whatever the nature of such claims may be, and to "report such as may appear to him to be sufficiently proved, stating separately those of each class."

■ In support of the second assignment of error, it is argued that the testimony of Mrs. Pinnell is in conflict with her father's final report as guardian, in that it shows the payment of $4,788 to his daughter in full settlement. This recital in the report does not necessarily mean that Bickers did not borrow $4,500 from his daughter, either before or after the settlement of his accounts. It was proper and necessary that Bickers settle his accounts as guardian when his daughter became twenty-one years of age. Whether he obtained a receipt from her and retained the money, or made the check payable to her, had her endorse it, and then cashed it, or devised some other method of settling his account was not disclosed.

Mrs. Pinnell, a young woman with no business experience, naturally relied on her father and his method of settling his account as guardian. That he was an honest and honorable man, and that his daughter should be paid the money she was entitled to appear from his oft reported declarations of his obligation to her. No matter how his account as guardian was settled, it affirmatively and positively appears from the declarations of Bickers to his daughter, to her husband, to Holland, from the notations on the interest checks, and from the statements in his letter, written within a month of his death, to Holland, that Bickers was indebted to his daughter in the sum of $4,500. Mrs. Pinnell declares that she has not been paid that amount or any part thereof. Corroboration of the indebtedness to her is substantial and ample. Code, § 8-286; *Krikorian* v. *Dailey*, 171 Va. 16, 197 S. E. 442.

|■ This brings us to the question whether the letter to Holland and the notations on the checks constitute an "acknowledgment in writing from which a promise of payment may be implied" within the meaning of Code, § 8-25. We think they did.

The letter of Bickers to Holland unequivocally and unqualifiedly acknowledged a present, outstanding indebtedness of $4,500 to his daughter. From it a promise of payment must naturally and irresistibly be implied. There is no expression, declaration, or qualification indicative of an intention not to pay. The notations on each of the checks, in Bickers' handwriting, constitute a specific acknowledgment of the debt. They declare the amount of the obligation and

the fact that it was evidenced by a written instrument, and the date to which each check pays interest. The evidence amply supports the application of Code, § 8-25. *Nesbit* v. *Galleher*, 174 Va. 143, 5 S. E. 2d 501 and cases and authorities therein cited; *Dinguid* v. *Schoolfield*, 32 Gratt. (73 Va.) 803.

Was the acknowledgment made, under the stated circumstances, to a stranger? We think not. The acknowledgment of the debt by Bickers in his letter to the trust officer of the executor of Bickers' will was made to one charged with the duty of acting for both Bickers' estate and Mrs. Pinnell. The letter was to enable the executor to satisfy the claims and demands against decedent's estate, and was to bind his daughter with respect to the interest due her. Surely, Bickers intended the acknowledgment to be communicated to Mrs. Pinnell and to influence her in accepting a statement of the debt.

In *Layman* v. *Layman*, 171 Va. 317, 198 S. E. 923, we find quoted with approval the following citation from Wood on Limitations, Vol. 1, Section 79:

" 'There are also cases where, although the acknowledgment or promise was not made directly to the creditor or his agent, yet being made for the purpose of deriving, and having derived, an advantage therefrom, it is, in effect, held that he is estopped from setting up the statute, upon the ground that he cannot be allowed to take the benefit of the acknowledgment and then repudiate its obligation. That is, where a debtor under such circumstances derives an advantage from the acknowledgment, he is treated as having intended that it should be accepted as such, and confided in by the creditor.' " (171 Va. page 325)

In the above case, Justice Hudgins, now Chief Justice, also quoted with approval the following statement from *DeFreest* v. *Warner*, 98 N. Y. 217, 50 Am. Rep. 657:

" 'Where the acknowledgment is to a stranger, and it appears that it was the intention that the acknowledgment made to him should be communicated to and influence the creditor, it is just as effectual to defeat the statute of limitations as if it had been made directly to the creditors or his authorized agent.' "

See also *First National Bank etc., et al.* v. *Gamble, Adm'r.*, 134 Tex. 112, 132 S. W. 2d 100, 125 A. L. R. 265; *Wentland* v. *Stewart*, 236 Iowa 661, 19 N. W. 2d 661, 161 A. L. R. 1206; *Orange Investment Co.* v. *Coyle* (Tex. Civ. App.), 95 S. W. 2d 1372; *Middlebrooks*

v. *Cabaniss*, 193 Ga. 764, 20 S. E. 2d 10; 54 C. J. S., Limitations of Actions, page 412; and 34 Am. Jur., Limitations of Actions, page 255.

Mrs. Bickers relies upon the case of *Quackenbush* v. *Isley, Exec.*, 154 Va. 407, 153 S. E. 818. A reading of that case will disclose a state of facts different from those here. There the notation on a check sent to the creditor to cover interest read only "Int. M. E. Quackenbush." No competent evidence showing the amount of the debt, the interest rate, or the interest period covered by the amount of the check was presented. The notation was merely indicative of the purpose for which the check was drawn, and was held not to constitute a new promise of payment to the principal obligation.

It is finally urged upon us that, under Code, § 8-26, the letter of Bickers to Holland was not admissible in evidence because Mrs. Pinnell did not give reasonable notice before the taking of the depositions of her intention to rely on it and the other exhibits to repel the bar of the statute of limitations.

In the first place, Mrs. Bickers did not, at any stage in the proceeding, file a plea of the statute of limitations. Code, § 8-13. The method and the procedure of proving claims against a decedent's estate before a commissioner in chancery were intended to provide simple, speedy and inexpensive settlements of estates. Claims are presented in an informal manner and without such pleadings as are required in courts of law or equity. Obviously, § 8-26 is not applicable to the procedure before a commissioner of accounts.

Here, Mrs. Pinnell filed a written statement of her claim, setting forth clearly and fully its basis, and attached her affidavit thereto. Notice of her intention to rely on the new promise of payment was thereby made known to Mrs. Bickers prior to the hearing before the Commissioner and before the hearing by the trial court. It does not appear that her claim was not fully developed and fairly heard. No motion was made that the report of the Commissioner be recommitted to him, or to another commissioner, or that a jury be empaneled to inquire into the claim. Code, § 26-33. No independent equity was alleged or shown by the evidence which required Mrs. Pinnell to ask for relief in equity. Cf. *Nicholas* v. *Nicholas, supra*.

For the reasons stated, the order of the trial court is affirmed.

*Affirmed.*