# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

CHRISTINE MELVIN BICKERS v. SHENANDOAH VALLEY NATIONAL BANK OF WINCHESTER, EXECUTOR, ETC.

October 12, 1959.

Record No. 4979.

Present, All the Justices.

The opinion states the case.

*A. Garland Williams,* for the appellant.

*H. K. Benham* (*Harrison, Benham & Thoma,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

Christine Melvin Bickers was granted an appeal from two decrees entered in the Corporation Court of the City of Winchester, dated respectively April 28, 1958 and July 21, 1958, wherein the chancellor overruled Mrs. Bickers' exceptions to an accounting filed by the Shenandoah Valley National Bank, Executor of the estate of her deceased husband, Myron Bray Bickers, which accounting had been duly approved by the Commissioner of Accounts.

In her brief Mrs. Bickers says the questions involved are:

"1. Whether the commissions taken by the Shenandoah Valley National Bank of Winchester * * * as Executor of the estate of Myron Bray Bickers are excessive?

"2. Whether Executor should pay itself commissions before the distribution of the estate; and if not, should it be charged interest on its commissions paid to itself before distribution is made?

"3. Whether the Executor should be charged with interest from June 24, 1953 [one year after qualification] to July 21, 1958 [the date of distribution], and the said interest be paid to Christine Melvin Bickers, widow of Myron Bray Bickers, on one-third (1/3) of all fund or funds received by the Executor prior to June 24, 1953, from the sale of the real estate which Myron Bray Bickers died seized and possessed?

"4. Whether the Executor should be charged with interest on the distributive share of the widow's interest in personal property from June 24, 1953, * * * to the time of partial distribution to the widow in September of 1956, and to such other time as the Executor makes final distribution of the estate?

"5. Whether the Executor should be compelled to state its settlement is the final scheme of distribution?"

A decision of these questions turns upon the evidence.

Myron Bray Bickers died June 15, 1952, and the bank qualified as executor of his estate on June 24, 1952. Under the will Mrs. Bickers was to receive a sum amounting to one-fifth of the estate after payment of "all my just debts, including my funeral expenses and a marker for my grave", and a bequest of $10,000 to testator's daughter by a former marriage, Barbara Rae Bickers.

There was an insurance trust agreement made in connection with the will, under which Mrs. Bickers was to receive one-fifth of the insurance money provided she did not renounce the will.

On June 19, 1953, Mrs. Bickers filed suit against the executor seeking to have the insurance trust agreement declared testamentary in character and therefore void. The lower court decided the issue against Mrs. Bickers, from which decision she appealed. On September 14, 1955, this court, in a four-to-three decision, reversed the lower court, holding that the insurance trust was testamentary in character and did not operate as an *inter vivos* trust. *Bickers* v. *Shenandoah Valley National Bank*, 197 Va. 145, 88 S. E. 2d 889. A petition for rehearing was filed in the case, which petition was denied on January 16, 1956. 197 Va. 732, 90 S. E. 2d 865. The fund from the life insurance policies amounting to $41,830.46 thus became a part of the estate.

After the decision in *Bickers* v. *Shenandoah Valley National Bank*, *supra*, the widow renounced the will on March 10, 1956. The estate consisted of the proceeds from the life insurance policies, real property, furniture and fixtures, and two wholly-owned corporations. One corporation dealt in second-hand automobiles, accessories and machinery, and the other was engaged in developing and selling real property.

The record discloses that in the operating of the real estate corporation Bickers failed to keep an accurate account in that he failed to keep the corporation's deposits segregated from his personal funds. This resulted in a hazardous tax situation, necessitating a careful audit to bring the figures in line for tax purposes. Further, in an effort to save taxes, the executor liquidated the two corporations before the sale of assets.

After the dissolution of the real estate corporation the real property theretofore owned by it was offered for sale at public auction, the

high bid being $36,000. The executor deemed this price insufficient and withdrew the property from sale. It later sold for $45,000.

In settling the affairs of the Bickers Motor Company the executor disposed of the assets and collected numerous accounts receivable.

The real property owned by the estate (other than that owned by the real estate corporation) consisted of a residence which sold for $27,500, and various and sundry other real property which sold for approximately $33,000.

The will provided that the furniture was to be distributed among Mrs. Bickers and the children of the testator by a former marriage if they could reach an amicable agreement, and if not, it was to be sold by the bank. No agreement could be reached and the furniture was sold at public auction.

In the collection of the life insurance there developed a disagreement between the insurance company and the bank as to Bickers' age, which was finally settled, the insurance company paying according to the bank's contention.

Litigation involving this estate has been extensive. The record in the case of *Bickers* v. *Shenandoah Valley National Bank, supra,* was returned by this court to the lower court in January, 1956, and as before stated, on the 10th of March, 1956, Mrs. Bickers renounced the will.

While the above appeal was pending the executor had filed settlement of its accounts before the Commissioner and had brought an *ex parte* proceeding to determine the claims against the estate.

On April 28, 1954, the Commissioner of Accounts filed his report of the claims presented to him, in which was included the allowance of the claim involving an alleged lost note in the sum of $4500, made by the testator and payable to his daughter, Frances Yeagers Bickers Pinnell. Exceptions were taken to the allowance of this claim by both Mrs. Bickers and the executor, on which no action was taken until June 12, 1956, at which time the matter was argued before the court and an order entered overruling the exceptions and sustaining the report.

On the 23rd day of July, 1956, Mrs. Bickers gave notice of an appeal from the ruling on the exception involving the Pinnell claim. Final disposition of this appeal, in which the chancellor's decision was affirmed, was made in October, 1957. For a history of the claim and Mrs. Bickers' contention see *Bickers* v. *Pinnell,* 199 Va. 444, 100 S. E. 2d 20.

Later the bank prepared a scheme of distribution for the estate which was not acceptable to Mrs. Bickers. In this the bank allocated the various items of expense between the real estate and the personal estate, including taxes. On January 27, 1958, the executor filed a supplemental scheme of distribution, to which Mrs. Bickers filed eleven exceptions. She contended that no expenses and taxes should be charged against her dower interest. She disputed the amount of dower which had been allowed her. She claimed to be entitled to receive one-third of the gross proceeds of sale. She contended that no part of the costs of sale and no part of taxes attributable to the real property should be charged against her share. The chancellor ruled against Mrs. Bickers, and no appeal was taken from this decision.

The exceptions to the report here involved were heard by the chancellor on April 28, 1958, at which time he considered the record and also heard evidence *ore tenus*, which evidence is not a part of the record before us. On May 26, 1958, the court, having considered the record in the case, the evidence heard *ore tenus*, and the exceptions of Mrs. Bickers, by its decree of that date, overruled certain of the exceptions, upheld one, and decision on several was reserved.

On July 21, 1958, another decree was entered by the court deciding adversely to Mrs. Bickers the exceptions previously reserved. In this decree the chancellor says that he based his decision upon "the evidence taken before the court April 28, 1958, *ore tenus*." As aforesaid, that evidence is not a part of the record before us.

The court, by its decree, also ordered that one-third of the $12,383.27, the income received by the executor from the invested assets of the estate, should be paid to Mrs. Bickers.

The decree further provided that the Shenandoah Valley National Bank be appointed Trustee to hold and invest the dower fund, and to pay Mrs. Bickers the income therefrom during her lifetime. The decree further directed the executor to make final distribution of the Bickers estate in accordance with its original and supplemental schemes of distribution except as modified by the decree. Thus the interest of the respective parties was finally determined by the chancellor in the decree of July 21, 1958, which decree generally approved the executor's scheme of distribution.

We will deal with the questions here involved in the order in which they are presented by Mrs. Bickers.

As to Question No. 1, she says in her brief that she abandons her

exception to the allowance of commissions of 5% on all items with the exception of the insurance fund of $41,830.46, on which she insists that the executor is not entitled to receive 5% commissions.

Section 26-30, Code of Virginia, 1950, reads:

"The Commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission on receipts or otherwise."

The construction of this section has been before this court on numerous occasions. See 8 Mich. Jur., Executors and Administrators, §§ 229-231, page 305, ff. What is "a reasonable compensation, in the form of a commission on receipts or otherwise" depends upon the facts of each case. These facts must be gained from the record in the case which should include all the evidence considered by the chancellor. As stated, the evidence heard *ore tenus* by the chancellor is not before us. We do, however, have before us the record as submitted which clearly demonstrates that the chancellor acted within his reasonable discretion in the allowance of the 5% commissions on all the assets including the proceeds from the life insurance policies which came into the hands of the executor in this instance.

In determining what is reasonable compensation to the executor the chancellor should take into account the value of the estate, the character of the work, the difficulties encountered, and the results obtained. No hard and fast rule can be applied in all cases. In some instances 5% upon the appraised value of the property coming into the hands of the executor would not be sufficient; in others it would be too much. "The allowance or refusal of compensation rests in the sound discretion of the court under the circumstances of each case." *Virginia Trust Co.* v. *Evans* (1952), 193 Va. 425, 433, 69 S. E. 2d 409, 414.

As stated in *Williams* v. *Bond* (1917), 120 Va. 678, 686, 687, 91 S. E. 627:

"Where no compensation at all is named in the will, the rule is that the allowance shall be reasonable, being usually five per cent on receipts, subject to increase or reduction of this rate under peculiar circumstances."

In the case of *Powers* v. *Powers* (1939), 174 Va. 164, 169, 3 S. E. 2d 162, 164, we said:

"In *Young* v. *Bowen*, 131 Va. 401, 108 S. E. 866, we expressly held that the *ex parte* settlements of the Commissioner of Accounts

are presumed to be correct until surcharged and falsified, and not only the duty of specifying errors, but also the *onus probandi* devolves on the party complaining."

Mrs. Bickers has failed to show that the chancellor abused his discretion in confirming the Commissioner's allowance of 5% in this instance. *Swank* v. *Reherd* (1943), 181 Va. 943, 27 S. E. 2d 191; *Virginia Trust Co.* v. *Evans, supra; Pritchett* v. *First National Bank* (1953), 195 Va. 406, 78 S. E. 2d 650.

■ The second question presented is whether the executor, under the facts and circumstances of the case, should be charged with interest on commissions paid before final distribution of the estate. Here Mrs. Bickers seeks to charge the bank with interest on commissions taken of $3,006.69 and $4,904.94 from December 28, 1953, and on $2,091.52 from June 30, 1954. We see no merit in this assignment. Where the settlement of an estate is not completed within a reasonably short period of time, through no fault of the executor, it is within the power of the chancellor, in the exercise of his discretion, to make, during the course of and prior to the close of the administration, an allowance for such part of the compensation as may then be fairly regarded as earned. The factual determination of this issue was in the sound discretion of the chancellor, and his decision that the executor had earned the commissions when taken and had acted in good faith should not be disturbed. *Jacobs* v. *Hoey*, 136 F. 2d 954 (CCA 2d); *Beard* v. *Beard*, 140 N. Y. 260, 35 N. E. 488; 34 C. J. S., Executors and Administrators, § 879, page 1053.

■ The third and fourth questions presented are governed by the same rules of law. In both it is contended that the executor should be charged with interest on the distributive share of the widow's interest in the estate (real and personal) from June 24, 1953 (one year after qualification) and the time of partial distribution to the widow in September, 1956, and to such other time as the executor makes final distribution of the estate.

In this connection it may be stated that as a general rule the personal liability of an executor to distributees of an estate, for interest, where there has been delay in the closing and settlement of the estate, depends entirely upon whether the delay was reasonable or unreasonable under all the circumstances of the particular case. The executor is free from personal liability for interest where the delay is reasonable, and chargeable with interest where the delay is determined to be unreasonable. The administration of this estate has not been a usual one. The

estate has been involved in litigation from its inception. (*Bickers* v. *Shenandoah Valley National Bank, supra; Bickers* v. *Pinnell, supra.*)

During the first year of the administration the executor did not know whether Mrs. Bickers was going to accept under the will or whether she would renounce the will. No action was taken by her until she brought the suit (*Bickers* v. *Shenandoah Valley National Bank, supra*), at which time an extension of the time for her election to renounce the will was granted by the court. During this period the bank was engaged in liquidating the assets of the estate in order to have cash for distribution.

On July 31, 1953, the bank's attorney wrote Mrs. Bickers' attorney and advised him that a partial distribution would be made to the heirs and asked if Mrs. Bickers wished a partial distribution of her share at that time, to which Mrs. Bickers' attorney replied that she was of the opinion that a partial distribution of the estate "would be improper until the rights of the parties have been determined."

And again, in December, 1953, the bank wrote Mrs. Bickers and advised that a further partial distribution would be made, and she was asked to reply as to whether she wished her share. To this letter there was no reply. Thus the executor was placed in the position of not knowing when Mrs. Bickers would call upon it for a distribution of the funds held. Such a dilemma is not conducive to the profitable investment of funds. In such a situation any investment made would, of necessity, be only such as could be liquidated upon short notice.

It will also be remembered that Mrs. Bickers did not renounce the will until March 10, 1956. Up until that time her dower interest in the estate did not come into being, and up until that time she had not indicated that she would accept dower. Furthermore, no Trustee was appointed to accept custody of the dower until the bank was appointed under the decree of July 21, 1958.

The propriety or impropriety of charging an executor interest on uninvested sums of money in his hands always depends upon the particular circumstances of each case. *Wood's Ex'or* v. *Garnett* (1835), 6 Leigh (33 Va.) 271. (For Annotation and collected cases on this subject, see 18 A.L.R. 2d 1384, *ff.*) This must be determined by the chancellor from the record and evidence in the case, and in this instance the *ore tenus* evidence considered and referred to by the chancellor in the decrees appealed from is not before us for consideration.

In this situation it is impossible for us to pass upon the question as to whether or not the decree is contrary to the law and the evidence. The decision of the chancellor that there was no unreasonable delay in the distribution is presumed to be correct, and in this instance the decree is binding upon us. *Lawrence* v. *Nelson* (1959), 200 Va. 597, 106 S. E. 2d 618; *Hodges* v. *Richmond Cedar Works* (1917), 120 Va. 492, 91 S. E. 644; 1 Mich. Jur., Appeal and Error, § 265, pp. 680, 681, 682; Rules of Court 5:1, § 3(e).

The fifth question, *i.e.,* whether the executor should be compelled to state that its settlement is the final scheme of distribution, was not argued before us for the manifest reason that the final decree treats it as final and orders the executor to make distribution accordingly. The point raised is obviously without merit.

We find no error in the decrees appealed from and they are

*Affirmed.*