**G. Loutrell TIMANUS and Helen Timanus, his wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 8036.**

United States Court of Appeals Fourth Circuit.

Argued March 17, 1960.

Decided April 28, 1960.

---

D. Sylvan Friedman and Joshua W. Miles, Baltimore, Md., for petitioners.

Lloyd J. Keno, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

The Commissioner of Internal Revenue denied the taxpayers' claim to the benefits of Section 44(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 44 (b),[1] which allows gains from the sale of real property to be reported on the installment basis, if the payments received by the taxpayers in the year of sale do not exceed 30% of the selling price of their interests.

There is no dispute that the taxpayers actually received payments totalling $174,000 in 1951, the year of sale. The crux of this factual controversy is whether the entire $600,000 paid by the purchasers was the consideration for taxpayers' interest in the property, or only $560,000 was for their interest and the remaining $40,000 was for the interest of T. D. Ellis, Jr., an attorney. If, as the taxpayers claim, they owned the entire property and sold it for $600,000, thereafter paying Ellis for his services, then the $174,000 received by the taxpayers in the year 1951 amounts to less than 30% of their selling price, and they should have been permitted to report their gain on the installment method. On the other hand, if, as the Commissioner insists, the taxpayers owned less than all of the property included in the sale, and only $560,000 was paid by the purchasers for the taxpayers' interest, and the remaining $40,000 was paid for Ellis' interest, then it follows that more than 30% of the taxpayers' selling price was received by them in the year of sale, and the claimed right to report the transaction under Section 44(b) was properly rejected.

In order to resolve this issue, it is necessary to go back to the acquisition of the property by Timanus. In 1945, Timanus became interested in purchasing a tract of land in Fort Lauderdale, Florida. He was assisted in negotiations by T. D. Ellis, Jr., a lawyer specializing in land titles and records in the area. The record owner of the property was a Florida corporation, Inlet Beach, Inc., all of whose stock, consisting of 100 shares, was owned by R. R. Saunders and Byron F. Snyder. These two men advised Timanus that although the local land records showed Inlet Beach, Inc., as the owner of the entire property, it in fact owned only an undivided two-thirds interest. Thomas Hall, whose whereabouts was then unknown, owned the other one-third interest though his deed had never been recorded. Timanus also learned that Clyde W. Fawcett was as-

---

1. "§ 44. Installment Basis.
　　*　　*　　*　　*　　*

"(b) Sales of realty and casual sales of personalty. In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

serting an adverse claim to the entire property by virtue of a deed held by him.

The sale of the property to Timanus was accomplished in the following manner. At Timanus' request, Saunders and Snyder purchased Fawcett's adverse claim. Then, on June 25, 1946, Saunders and Snyder disposed of their interest in the property, which they held through the corporation, by selling their 100 shares of stock in Inlet Beach, Inc., the entire outstanding issue, to Timanus for $169,252.91. In addition, Fawcett and his wife executed a deed to the whole property to Timanus and his wife on the same day.

Ellis' fee for his services as attorney, the amount of which is not disclosed in the record, was paid in cash. However, he became interested in the project and paid $500.00 for five shares of stock in Inlet Beach, Inc., which were issued to him on June 26, 1946. This bargain, as will appear from testimony hereinafter quoted, was presumably intended to cover compensation to Ellis for future services in connection with the property. Timanus and Ellis agreed that the latter was to have a 5% interest in all the Inlet Beach property, represented by these five shares of stock.

Subsequently, Timanus located Hall and, on April 1, 1947, paid him $55,000 in cash for his one-third interest in the property. At the same time, Hall delivered a deed conveying his interest in the property to Timanus alone. The testimony is not in dispute that, after this transaction, "it was understood" by Timanus and Ellis that Ellis had a 5%

interest in that portion of the tract as well as in the two-thirds held by Inlet Beach, Inc.

In the early part of 1951, Timanus and Ellis negotiated for the sale of the Inlet Beach property to A. Dreier and K. B. Weissman of New York City. The negotiations were consummated on March 19, 1951, when Timanus, his wife, and Ellis entered into a written agreement with Dreier and Weissman to sell the entire Inlet Beach property for $600,000, subject to an outstanding mortgage for $35,000.[2] On the same day, Inlet Beach, Inc., conveyed title to Timanus, his wife and Ellis by a warranty deed which had been prepared by Ellis in January, 1950, in connection with a prospective sale that had fallen through. Pursuant to the contract of sale, Dreier and Weissman paid $55,000 in cash to Timanus as a deposit on account of $600,000, the specified selling price. The closing date was to be July 20, 1951. It was agreed that of the $600,000 consideration, an additional $245,000 would be paid in cash, and that a purchase money mortgage would be given for the balance of $300,000.

When the agreement was made to sell the property for $600,000, Timanus and Ellis, now aware of the latter's protracted services, agreed orally—and this much is undisputed—that Timanus and his wife would receive $560,000 of the proceeds, and Ellis $40,000. Their arrangement was confirmed on July 12, 1951, when all the parties to the sale agreed to modify the terms of payment specified in two mortgage notes which had been given on April 5, 1951.[3] This agreement of July 12, 1951, which was recorded, expressly states that "T. D. Ellis, Jr., owns and

---

2. In the Tax Court, the Commissioner argued that the amount of the mortgage should be added to the amount of the payments received by Timanus in 1951. The Tax Court held, on this issue, "that under Regs. 111, sec. 29.44–2, $35,000, the sum of the mortgage assumed by the buyers is not to be considered part of 'initial payments.'" The Commissioner has not pressed this argument on appeal, and, in the view we take of the case, it becomes unnecessary to consider the point.

3. In order to allow the purchasers to start construction on the property before the closing date originally agreed upon, title to the property was conveyed by Timanus, his wife, and Ellis, by deed dated April 5, 1951, to the Fort Lauderdale Beachfront Company, a corporation formed by Dreier and Weissman. On the same day, Fort Lauderdale Beachfront Company executed a mortgage to Timanus, his wife, and Ellis, securing two notes for $245,000 and $300,000, payable over a ten-year period.

holds the sum of $40,000 of said mortgage indebtedness."

The Tax Court found that the $174,000 received by the taxpayers exceeded 30% of the selling price of their interest in the property, which was determined to be $560,000. Accordingly, the court held that the taxpayers were not entitled to report their long-term capital gains from the sale on the installment basis.

The taxpayers maintain that the selling price of their interest was $600,000, rather than $560,000, and that Ellis received $40,000 not because of his ownership of an interest in the property, as found by the Tax Court, but in payment for his services to the taxpayers in connection with the property. It is argued that "[t]he stock in Ellis' name was but part of a yardstick used by the parties by which those services were to be evaluated." In support of their position, taxpayers stress the fact that Timanus paid all the expenses during the period of ownership, totalling $25,288.35, with no adjustment being made by Ellis; that the deed from the Fawcetts was to Timanus and his wife; that the deed from Hall was to Timanus individually; and that, if Ellis were a 5% owner, he would have received only $30,000 from the proceeds of the sale.

Notwithstanding these considerations, the record sufficiently supports the finding and decision of the Tax Court; at all events, we do not think the Tax Court clearly erroneous. The testimony of both Ellis and Timanus discloses that they believed that Ellis possessed an ownership interest in the property. Ellis testified on this point as follows:

"Q. Now, going back to my earlier question, as to the efforts made to sell this property, Mr. Ellis, you had acquired an interest in the property yourself? A. Yes, originally Dr. Timanus bought the property, and I charged him what I considered a very small fee. I have forgotten what it was, for my work, and this gentleman, J. George Stewart, was to be the sort of local representative for him here.

"However, I found that I was doing very considerable work which was not in the nature of an attorney at all, so I asked the Doctor if I could acquire an interest in the property and I did.

"From then on, as a co-owner or participant, I might say, I was very active in myself trying to handle the property and get it sold."

Timanus himself testified:

"Q. What was Mr. Ellis' interest in the property? A. After I had talked to Mr. Ellis, I arranged to let him obtain a five percent interest in the property.

\* \* \* \* \* \*

"(Witness) Not more than five percent interest at the time I first talked to him, and at a later date after I had acquired the Hall interest I gave him a five percent interest in that also."

The factors emphasized by the taxpayers are not inconsistent with an ownership interest in the property by Ellis. From the time Ellis received the five shares of stock, in 1946, he was active, in his own words, "as a co-owner or participant." In all the negotiations and documents involving the sale of the property, Ellis was a participating *party*. He was named in the deed of March 19, 1951, which transferred the property from Inlet Beach, Inc., to its shareholders, Timanus, his wife, and Ellis; he joined in the written agreement of March 19, 1951, to sell the property to Dreier and Weissman; he was a grantor in the deed of April 5, 1951, which conveyed the property to the Fort Lauderdale Beachfront Company; and, finally, he was a party to the agreement of July 12, 1951, providing for the final detailed terms of payment.

That Timanus paid all the expenses in connection with the property does not necessarily establish that he was the sole owner. Such payments do not conflict with the view that Ellis' services were his contribution to the venture, in which he owned a small interest, while Timanus was the financial "backer." Neither the

deed from the Fawcetts to Timanus and his wife nor the one from Hall to Timanus individually is of controlling significance, in light of Ellis' stock ownership and his participation in his own name in the sale.

Inferences suggested by the taxpayers in opposition to those drawn by the Tax Court are best answered by the quoted testimony of Timanus himself and of his witness Ellis.

The fact that Ellis received more than $30,000, which would be 5% of $600,000, does not help the taxpayers' argument, for even if we regard Ellis' share as limited to $30,000, and therefore the taxpayers' portion as $570,000, the result would be no different since the taxpayers still would have received more than 30% of the selling price of their interest in the year of sale.

Affirmed.