Paul B. Huebner and Carol T. Huebner v. Commissioner.
Huebner v. Commissioner
Docket No. 1534-64.
United States Tax Court
T.C. Memo 1966-73; 1966 Tax Ct. Memo LEXIS 210; 25 T.C.M. (CCH) 406; T.C.M. (RIA) 66073; April 7, 1966
Paul B. Huebner, pro se, 5231 Hohman Ave., Hammond, Ind. Dennis J. Fox, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency of $2,401.36 in the petitioners' income tax for the year 1958 and $551.55 for the year 1960. The issues to be decided in this case are: (1) Whether the respondent acted arbitrarily in changing the acounting method used by the petitioner and in including in his gross income for 1958 the amount of $4,000 received in that year as *211 payment for legal services to be rendered in future years; (2) whether we should sustain the respondent's revaluation of the 1958 inventory of a store in which the petitioner had an interest; and (3) whether the respondent erroneously redetermined the amount of income which the petitioner derived from such store in 1960. There were other issues in this case, but they have been conceded - some by the petitioner, and others by the respondent. Findings of Fact Petitioners, Paul B. and Carol T. Huebner, are husband and wife. During the taxable years 1958 and 1960, they resided in Hammond, Indiana, and filed their joint income tax returns with the district director at Indianapolis, Indiana. For convenience, Paul shall be referred to as the petitioner. The petitioner is an attorney and during the years in question he was associated in the practice of law with his uncle, Arnold Huebner. This association consisted of sharing expenses and office space, but each attorney retained his own earnings. The expenses were shared according to a percentage determined by the amount of money each associate earned. The petitioner viewed the arrangement not as a partnership, but one where there was *212 a common interest in the funds each attorney earned. The petitioner's uncle prepared and filed partnership information returns for the taxable years 1956 through 1960, under the partnership name of "Huebner and Huebner." Arnold Huebner executed these returns with petitioner's approval. Petitioner regarded the law firm as a partnership for tax purposes. During the taxable years 1958 and 1960, the law firm of Huebner and Huebner used a type of accrual method of accounting. The effect of such accounting method was usually to recognize income at the time services were performed, rather than at the time of payment. If a fee was paid in advance, the attorney did not include it in his gross income until the services were performed. Each attorney usually included in gross income amounts representing services performed during the year, even though the fee had not been paid. As a result of objections by the Internal Revenue Service, the firm changed to a cash accounting method in late 1960 or early 1961. Thereafter, the Commissioner recalculated earnings and expenses for 1957, 1958, 1959, and 1960 to reflect income on a cash method of accounting. The petitioner was asked to approve this *213 action but refused to do so. In 1963, his uncle did agree to the Commissioner's adjustments and signed a consent to that effect. The consent purported to be on behalf of a partnership. During the year 1958, petitioner collected $13,000 in connection with services for the estate of Meta Haehnel, deceased. Petitioner's services to the estate began in 1957 and continued until 1964. The payments in 1958 were for legal services rendered and to be rendered. A portion of the fee was considered to be an advance. The petitioner testified, that he advised the executrix that the fee was subject to "her agreement upon the conclusion" and "the approval of the probate court." In accordance with the law firm's accounting method, the amount in excess of the sum earned by the date of payment was designated as a liability by the petitioner. As of December 31, 1958, $4,000 was considered a liability with respect to this transaction. A substantial part of the administrative work on the estate was completed in 1958, but a suit contesting the will was commenced in that year and was not completed until 1964. In the final account, the court permitted a total fee of slightly more than $12,500. Payments *214 from the Haehnel estate were received in the form of checks. All of the checks were deposited in the law firm's bank account. The last payment of $3,000, received in October 1958, was used by petitioner to purchase inventory for a retail partnership of which he was a member. The remainder of the $13,000 fee was used for office and personal expenses. No note or other evidence of indebtedness was given to the executrix for the liability petitioner recorded on the books of the law firm. The respondent included the entire $13,000 payment for the Haehnel estate in the petitioner's gross income for 1958. This adjustment increased petitioner's gross income for that year by $4,000, and was one of the adjustments required when the respondent changed the law firm's method of accounting. The respondent increased the petitioner's income from the law firm by $5,731.93 for 1958, which sum included the $4,000 of income from the Haehnel estate. The respondent revalued the 1958 closing inventory of a "store," known as "Banjo's Bargains," operated by a partnership of which the petitioner was a member. The petitioner valued the partnership's inventory at $6,442.23. The inventory was taken by petitioner's *215 partners on December 30, 1958, at his direction. The petitioner believed that the valuation figure the partners arrived at was correct, and he entered it on his 1958 income tax return. In the deficiency notice, dated February 28, 1964, the respondent determined that the value of the 1958 closing inventory was $8,323.89. In mid-1960, all of the assets of Banjo's Bargains were transferred to one of the partners. That partner, one Barney, then signed a note for $14,800. The petitioner reported this transaction as a $650 capital loss on his 1960 income tax return. He also claimed an ordinary loss of $927.33 from the operation of Banjo's Bargains during that year. In the deficiency notice, the respondent determined that the petitioner had a net profit from Banjo's Bargains in the amount of $1,495.63 for 1960. The respondent further determined that the petitioner did not have a $650 capital loss for that year. Opinion We will consider first the issue of whether the respondent acted arbitrarily in changing the petitioner's method of accounting and including in his 1958 gross income fees attributable to services to be performed in subsequent years. This issue presents us with another *216 of the many controversies concerning proper tax accounting for prepaid income. Section 451 of the Internal Revenue Code of 1954[1] contains the general rule for the time of reporting income and provides: SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION (a) General Rule. - The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. * * *
In addition, section 446 states: SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING (a) General Rule. - Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. (c) Permissible Methods. - Subject to the provisions of *217 subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting - * * *
(2) an accrual method; * * *
Although the respondent made a number of changes in the method of accounting used by the law firm, the petitioner has furnished us with details concerning only one of these changes - the $13,000 fee which he received in 1958 for legal services performed for the Haehnel estate. The amount of the fee petitioner could keep was uncertain because it was subject to approval or disapproval by the probate court. Under the method of accounting employed by the petitioner, $4,000 was treated as not earned by the end of 1958 and was, therefore, entered as a liability as of that time. The petitioner argues that his method of accrual accounting had been used from 1956 through 1960 and was authorized by section 446(c)(2). He further points out that he did not consent to the respondent's retroactive recalculation of income on the cash method, and that his uncle did not have authority to consent to such recalculation on the petitioner's *218 behalf. Lastly, petitioner vigorously contends that the respondent acted arbitrarily in changing his accounting method retroactively. The respondent counters that, regardless of the method of accounting used, the entire sum of $13,000 received for past and future services to the Haehnel estate should be included in gross income for 1958. The respondent takes the position that when income is received without restriction as to its disposition, such income is taxable upon receipt, even though some or all of it may have to be repaid. In this controversy over proper tax accounting for prepaid income the respondent's position must be sustained, as it has been in the past. The fact that the amount of the fee that would ultimately be approved by the estate and the court was not determinable in 1958 does not prevent its being taxable in that year. The petitioner treated the entire $13,000 as his own income. He does not contend that there were any restrictions on his use of any part of the $13,000, and there is no proof of any such restriction. Moreover, he does not argue that the fee, or any part of it, was received as a loan, and there was no proof of a loan. Thus, it appears that the *219 entire fee was received under a claim of right, and therefore taxation of the fee is not postponed because of the possibility that part of it might have to be repaid to the estate. North American Oil v. Burnet, 286 U.S. 417 (1932); Jacobs v. Hoey, 136 F. 2d 954 (C.A. 2, 1943), cert. denied 320 U.S. 790 (1943). Nor is the taxation of the $13,000 fee to be postponed by reason of the fact that part of it is payment for services to be performed in future years. The time of taxation of prepaid income has been the subject of three decisions by the Supreme Court in the past decade, Schlude v. Commissioner, 372 U.S. 128 (1963); American Automobile Association v. United States, 367 U.S. 687 (1961); Automobile Club of Michigan v. Commissioner, 353 U.S. 180 (1957), rehearing denied 353 U.S. 989 (1957). In these cases, the taxpayers sought to defer the taxation of income, which they had received, for the reason that part of such income was payment for services which they might have to render in subsequent taxable years. The Supreme Court was told that under generally-accepted accounting practices, such *220 income is prorated over the period when the services may have to be performed. Nonetheless, the Court consistently held that the income was taxable in the year when it was received. The Court's conclusion was influenced by the legislative activities concerning the tax treatment of prepaid income. Although Congress once provided for the deferment of prepaid income, it repealed such provisions retroactively one year after their enactment. Accordingly, the Court has adopted the position that any relief from the current taxation of prepaid income must be provided by the Congress. Since the Supreme Court's decision in Schlude, supra, the Tax Court has considered several cases in which the petitioner attempted to distinguish his situation from Schlude. However, this Court has looked to the fundamental rationale of the Supreme Court's decisions and concluded that the distinctions were not material. Bell Electric Co., 45 T.C. 158 (1965); Chester Farrara, 44 T.C. 189 (1965); E. Morris Cox, 43 T.C. 448 (1965), acq. I.R.B. 1966-1, 7, nonacq. on another issue I.R.B. 1966-1, 10. If a taxpayer receives income which is not subject to any restriction, *221 such income is taxable when received, unless Congress has specifically provided for its deferment. We see no basis for distinguishing the petitioner's situation from those involved in the decisions by the Supreme Court and by this Court. Although the law firm had consistently followed a method of deferring the reporting of prepaid income, that fact does not lead to a different conclusion. The entire $13,000 fee was includable in the petitioner's gross income for 1958. Since we conclude that the fee was taxable in 1958, we need not decide whether there was a partnership under Indiana law and whether the petitioner's uncle had the authority to make an agreement with the respondent that would apply to the petitioner. The fee was includable in 1958, irrespective of any agreement made by his uncle. Although the petitioner disputed the action of the respondent in changing the law firm's method of accounting from an accrual method to a cash method, the petitioner has failed to provide sufficient proof for us to consider whether the changes other than that resulting from the Haehnel fee are proper. The $13,000 fee, the only item with respect to which we have sufficient information, is *222 includable in his gross income for 1958, regardless of the method of accounting used by the petitioner. The additional $1,731.93, by which the respondent increased the petitioner's income from the law firm for 1958, is not explained in the record. We do not have enough evidence to pass on the question of whether the respondent's additional adjustments are proper. Accordingly, we must sustain the adjustments with respect to the income from the law firm as set forth in the notice of deficiency. The second issue is whether we should sustain the respondent's revaluation of the 1958 closing inventory of a store operated by a partnership of which petitioner was a member. The petitioner argues that the respondent's valuation was erroneous and that the true value of the closing inventory was $6,442.23. The respondent contends that the petitioner has failed to properly plead this issue or to carry his burden of proof. We are convinced that both parties have treated the valuation of the 1958 closing inventory as an issue in this case, and that a liberal reading of the petition, with its broad attack upon the deficiency as a whole, requires us to consider the issue. In his opening statement, *223 the petitioner attacked the respondent's valuation of the inventory. The respondent's opening statement expressly recognized the issue and attempted to justify the revaluation. It was clear at the outset of this hearing that one of the factual issues in the case was inventory valuation. During the hearing, the petitioner testified concerning the manner in which the inventory was taken. The respondent did not object to the admission of this testimony upon the ground that it was immaterial to issues in the case. There was no showing or claim that the respondent was surprised, and he cross-examined the petitioner concerning this issue. After the hearing was closed, simultaneous briefs were submitted by each party. In his brief, the respondent raised for the first time his objection that the petitioner had failed to plead the issue. However, his brief also anticipated the petitioner's arguments on the issue and attempted to meet them. The policy of our rules on pleading is to inform the parties of the issues which they should be prepared to meet; thus, they will not be surprised. From an examination of the petitioner and of the conduct of the parties, it appears that the respondent was *224 not surprised and will not be prejudiced by consideration of this issue. Erwin Gerber, 32 T.C. 1199 (1959); G. Loutrell Timanus, 32 T.C. 631, 643 (1959), affd. 278 F. 2d 297 (C.A. 4, 1960); Commissioner v. Finley, 265 F. 2d 885 (C.A. 10, 1959), affirming a Memorandum Opinion of this Court, cert. denied 361 U.S. 834 (1959). We now proceed to consider whether we should sustain the respondent's revaluation of the 1958 closing inventory. We conclude that the petitioner has failed to furnish us with sufficient evidence to show that the respondent was in error. Although the petitioner tells us that the inventory was taken by two of his partners at his direction, he does not furnish us with any records to support his testimony, and he does not explain how the inventory was taken. Though the business was small, we cannot see how it could have been operated without some bookkeeping. In taking an inventory, there is room for much discretion in selecting the method to be used, and there are many opportunities for error in taking the count of goods. The petitioner has done little more than tell us that he still believes the *225 figure which he entered on his return is correct. He has not supported his testimony by explaining the method used in valuing the inventory so that we have some assurance that it was reasonable; and a production of the records which should have been made, however informally, would give us assurance as to the accuracy of the inventory. Guy v. Commissioner, 35 F. 2d 139 (C.A. 4, 1929), affirming, 13 B.T.A. 51 (1928). For these reasons, we sustain the respondent's adjustment of the 1958 inventory. Wallis v. Commissioner, 357 F. 2d 313 (C.A. 10, March 11, 1966), affirming a Memorandum Opinion of this Court. The last issue is whether the petitioner is entitled to treat a transfer of all partnership assets to another partner, in exchange for that partner's note, as a sale or exchange of a capital asset. We do not reach the merits of this issue because the petitioner has failed to properly plead it or develop it as an issue in the case. Petitioner did not mention such an issue in his opening statement, and his direct testimony tells us no more than that the transaction was a sale of all the assets and occurred in mid-1960. The petitioner did not *226 specify his contentions or describe the transaction in such a way that the respondent could identify it as an issue and act accordingly. For example, the respondent's opening brief did not discuss the sale of partnership assets, and we believe it likely that this omission was caused by the petitioner's faulty pleading and presentation of the issue. The petitioner's attempt to argue this issue has produced unfairness and surprise, and for that reason we refuse to consider his arguments. Therefore, the entire adjustment the respondent has made with respect to the 1960 transaction is affirmed. In order to give effect to concessions made by each party and this opinion, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩