483 F.2d 18
 73-2 USTC P 9556
 Chick M. FARHA and Leenda Farha, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Woodrow W. FARHA and Dodie Ann Farha, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Sue M. FARHA, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 Nos. 72-1867 to 72-1869.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted July 16, 1973.
Decided July 16, 1973.
 
 Roy C. Lytle of Lytle, Soule & Emery, Oklahoma City, Okl., for appellants.
 Carleton D. Powell, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., and Meyer Rothwacks and Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, on the brief), for appellee.
 Before BREITENSTEIN, HILL and DOYLE, Circuit Judges.
 DOYLE, Circuit Judge.
 
 
 1
 The present appeal involves an income tax controversy in which Sec. 453 of the Internal Revenue Code of 1954[1] is in question and, particularly, the limitation on the installment method of reporting income which requires that in the taxable year the sale or disposition of the payments do not exceed 30 percent of the selling price.
 
 
 
 * * *
 In the case at bar there was a sale of stock in a corporation which was engaged in the buying, processing and selling of meat and food products, together with a partnership which owned the land and buildings, trademarks and trade names. The question is whether the corporation and the partnership can be treated as a single business unit so that the 30 percent limit can be related to the total selling price. The Tax Court ruled that it could not, holding that business was conducted through separate entities and that they could not be brought together in order to serve a purpose favorable to the taxpayers.[2]
 The businesses here in question were conducted by the Farha family prior to August 19, 1967. There was a corporation called Hereford Heaven Brands, Inc. It was engaged in the buying, processing and selling of meat and food products. The shareholders were Chick M. Farha, Woodrow W. Farha, Sue M. Farha and Fred M. Farha. Fred is not a party to this appeal.
 The partnership was called Hereford Brands Company. It owned the land and buildings and, as indicated above, the trademarks and trade names. On the mentioned date (August 19, 1967), the Farhas sold the entire business to George A. Hormel & Company. In connection with this sale there were three separate written agreements which were all made at the same time.
 The first of these provided for the sale of all the partnership assets. The total of this was $855,000. In 1967, Chick M. Farha received $32,977.50 out of a total of $375,943.50; Sue M. Farha received $8,242.50 out of a total of $93,964.50; and Woodrow W. Farha received $32,977.50 out of a total of $375,943.50.
 In connection with the sale of the stock of the corporation, 80 percent of this was sold to Hormel as of August 19, 1967. The amount received was $325,000. Chick, Sue and Woodrow Farha received, as of the date of the transfer, and during 1967, $10,000, $2,500 and $10,000 out of totals of $130,000, $32,500 and $130,000, respectively. The agreement further provided that after August 19, 1967 and prior to September 19, 1967, Hormel agreed to cause the corporation to redeem the remaining 20 percent of the stock to be determined by reference to assets as of August 19. This was purchased for $308,116.39 in an amount equal to the company cash, the accounts receivable collected, the value of inventories of finished products at 75 percent of the wholesale price, the cost of raw materials and the value of unexpired insurance and prepaid expenses, less accounts payable. As of the date of this transaction, Chick, Sue and Woodrow Farha received $123,246.55, $30,811.65 and $123,246.55, respectively.
 A third agreement made provision for a restrictive covenant, whereby the Farhas agreed not to compete, directly or indirectly, with Hormel. It provided that the Farhas, individually, would receive $2,500 initially and $2,500 in each of the next three years.
 In making out their 1967 income tax returns, the Farhas claimed the benefits of Sec. 453, supra, in respect to gain realized on the sale of their partnership interests and the sale of 80 percent of the corporate stock.
 The transaction last described involving the sale of 20 percent of the stock was not set up as an installment transaction.
 The Commissioner ruled that the installment method of accounting could not apply to appellants' sale of 80 percent of the corporate stock. The Tax Court affirmed the Commissioner.
 The argument made by appellants in the Tax Court was that the sale of 80 percent of their stock and the 20 percent redemption were separate transactions, but the Tax Court ruled otherwise. It held that the sale and redemption of the stock constituted a single transaction and more than 30 percent of the selling price was received during 1967. The appellants also contended in the Tax Court that if the sale and redemption were a single transaction, it, along with the sale of the partnership, should be considered a single transaction. It was argued that the sale should be considered as the selling of a going business. Considered in this light, less than 30 percent of the total selling price would have been received during 1967, whereby the appellants would have been eligible for Sec. 453 treatment, but the Tax Court rejected this approach also.
 Here the appellants continue to argue that the stock and the partnership sales should be aggregated, but we are unable to agree with this reasoning. The question is largely one of fact. The Tax Court so regarded it and our disposition is to accept this viewpoint.
 There is substantial evidence in support of the Tax Court's decision. A partnership sale and corporate sale were evidenced by separate agreements. There were distinct legal entities sold. A partnership entity had acted as landlord, whereas a corporate entity had operated the business. We do not regard the Tax Court's ruling as a disregard of business realities and as embracing legal formalities. See Clodfelter v. Commissioner, 426 F.2d 1391, 1393-1394 (9th Cir. 1970); Tombari v. Commissioner, 299 F.2d 889, 892 (9th Cir. 1962); Commissioner v. Moore, 48 F.2d 526, 528 (10th Cir. 1931). Also, we agree with the Tax Court that "there is no evidence that Hormel would not have been happy to obtain either one without the other."
 In essence, the Tax Court reasoned that the taxpayers were, in effect, estopped by their previous conduct so that they could not bring together businesses which they had treated as distinct units. Thus, it was they who had fragmented, and we cannot disagree with the reaction of the Tax Court.
 Perhaps the Tax Court could, under the evidence, have found that the transaction was the sale of but one business. It did not do so and it is not appropriate for this court on appeal to retry the facts. The Tax Court's findings are not shown to be clearly erroneous nor are its legal conclusions unsupported. See Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1963); Riss v. Commissioner, 368 F.2d 965, 971 (10th Cir. 1966); Timanus v. Commissioner, 278 F.2d 297 (4th Cir. 1960).
 The judgment of the Tax Court is affirmed.
 
 
 [1]
 Sec. 453. Installment Method
 (a) Dealers in Personal Property.--
 (1) In general.--Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.
 (b) Sales of Realty and Casual Sales of Personalty.--
 (1) General rule.--Income from--
 (A) a sale or other disposition of real property, or
 (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).
 (2) Limitation.--Paragraph (1) shall apply--
 (A) * * * only if in the taxable year of the sale or other disposition--
 (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.
 
 
 [2]
 The reasoning of the Tax Court is shown in the following summary excerpt-from the opinion:
 To what extent, if any, should the transactions here be comminuted or fragmented?
 On the stipulated record here we are presented with a factual situation in which petitioners sold certain interests with respect to two distinct entities-- the corporation and the partnership. On the one hand, the inference seems strong that the function of the corporation and the function of the partnership were complementary and that when taken together the two entities comprised a larger operation which might loosely be called a "business." On the other hand, the record proves that the "business" was operated, and recognized to be operating, in a mixed form for income tax purposes. Thus, the "business" existed as two separate taxable entities and there is no evidence that Hormel would not have been happy to obtain either one without the other.
 The facts here presented are that petitioners made the choice to conduct their "business" in mixed form and to have the separate entities of corporation and partnership recognized for income tax purposes. Petitioners then cast their sales to Hormel in this same form and respondent's determinations have adopted and confirmed it. Recognizing this posture we can only conclude that petitioners have not carried their burden of proving that the substance of their actions was the single sale of the "business" and we cannot permit them to ignore the existence of the separate entities in accounting for the gains from such sales. Therefore, we hold that for the purposes of section 453 the transactions of August 19, 1967, amounted to two sales--(1) a sale by each petitioner of all of his shares in the corporation and (2) a sale by each petitioner of either his interest in the partnership or of his interest in each of the partnership assets transferred to Hormel.